In the Matter of the Care and Treatment of Stacy WHITFIELD, a/k/a Stacey Whitfield, a/k/a Stacey L. Whitfield, a/k/a Stacey Lavell Whitfield, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 66775.

Missouri Court of Appeals,
Western District.

Feb. 13, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 25, 2008.

Application for Transfer Denied
May 20, 2008.

Emmett D. Queener, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. General, Andrea K. Spillars, Asst. Atty. General, Jefferson City, for respondent.

Before LISA WHITE HARDWICK, P.J., JAMES M. SMART, JR., and JAMES E. WELSH, JJ.

JAMES M. SMART, JR., Judge.

Stacy Whitfield appeals the judgment of the Jackson County Circuit Court declaring him to be a sexually violent predator (SVP) as defined by section 632.480(5) [1] and committing him to secure confinement in the custody of the Department of Mental Health (DMH). We affirm.

## Background

In March of 1990, Whitfield pleaded guilty to forcible sodomy and was incarcerated in the Department of Corrections. Whitfield's scheduled release date was January 14, 2005. Prior to that date, the State filed a petition to commit Whitfield under the Missouri SVP law, section 632.480 *et seq.*

---

1. All statutory references are to the Revised Statutes of Missouri, Cum.Supp.2005, unless otherwise noted.

Whitfield filed a motion to dismiss the petition, asserting that his commitment would violate his statutory right to treatment and his constitutional right to due process by failing to allow for individualized treatment that he could successfully complete. He suggested that section 632.495 obligated the DMH to provide him with treatment, but the treatment that he would receive at the Missouri Sex Offender Treatment Center required cognitive skills that Whitfield did not possess. The court denied the motion. Whitfield made an offer of proof through the testimony of Dr. Sandi Isaacson, who had evaluated Whitfield. Dr. Isaacson stated that Whitfield had an IQ of 74, just above mentally retarded. She also stated that Whitfield had significant difficulty retaining information in his long-term memory. Dr. Isaacson opined that Whitfield did not possess the cognitive skills to complete sex offender treatment if committed. The court still declined to grant the motion to dismiss.

At a bench trial on March 30, 2006, the State presented the testimony of Dr. Steven Mandracchia. Whitfield presented no evidence. Dr. Mandracchia testified that after reviewing the records and interviewing Whitfield, he concluded that Whitfield suffers from the mental abnormality of pedophilia. He also testified that Whitfield has serious difficulty controlling his behavior. Dr. Mandracchia said Whitfield met the statutory definition of an SVP and was more likely than not to commit future acts of sexual violence if not confined to a secure facility.

The court found that Whitfield met the definition of an SVP and committed him to the custody of the director of the DMH.

## Discussion

Whitfield's sole point suggests that the Missouri SVP statute and constitutional due process considerations require that Whitfield be provided appropriate, potentially successful treatment if he is to be confined as an SVP. The question is one of statutory interpretation involving application of constitutional principles. This is an issue of law, and our review is *de novo*. *Murrell v. State*, 215 S.W.3d 96, 102 (Mo. banc 2007).

Whitfield claims that the Missouri SVP statute, as well as constitutional due process of law, require that the State provide adequate treatment if he is to be confined as an SVP. Whitfield claims he does not have the cognitive skills necessary to process the information provided while in confinement. Therefore, he says, the treatment cannot be successful. Because the State does not provide adequate treatment, he argues, he cannot be committed as an SVP.

We are not persuaded. First, though it really makes no difference whether we agree with Whitfield's view of the record, we do disagree. Next, and this is the key factor, we find the premise of Whitfield's legal argument to be faulty.

### 1. The Record

The record does not establish that there is no possibility of Whitfield's receiving any kind of adequate treatment while confined. The trial court was not required to believe Dr. Isaacson's testimony. The trial court is the evaluator of credibility. Dr. Isaacson, who lacked a thorough knowledge of the programs the State was capable of providing, reviewed a handout entitled "The Big Picture" issued by the Missouri Sex Offender Treatment Center. The handout gave a broad overview of the techniques generally used to treat SVPs confined in the center. Dr. Isaacson suggested that it appeared from the handout that SVPs were treated based on cognitive behavioral principles, oral intervention, and management using both cognitive be-

havior theory and relapse prevention models. She did not believe Whitfield possessed the cognitive skills to respond to this kind of treatment. Apart from her opinion, there was no evidence that an SVP with significant cognitive limitations could not be provided some kind of individualized treatment if necessary. Dr. Isaacson's opinion did not bind the trial court.

### 2. Faulty Premise

In any event, even if the court *had* believed Dr. Isaacson's opinion, the court would have properly denied the motion to dismiss because the premise of Whitfield's argument is flawed. Whitfield errs in concluding that the provision of treatment is the only essential and legitimate purpose of the SVP statutes.

Whitfield points out that there is a statutory right to treatment in the language of section 632.495.2:

> If the court ... determined that the person is [an SVP], the person shall be committed to the custody of the director of the [DMH] for *control, care and treatment* until such time as the person's mental abnormality has so changed that the person is safe to be at large.

(Emphasis added.) We agree that the statute requires the State to offer reasonable forms of treatment to persons adjudicated to be SVPs. *See Kansas v. Hendricks,* 521 U.S. at 346, 367, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). However, it is a logically fallacy to conclude that because the statute directs something, that one thing is the only purpose of the statute.

Our review of the plain language of the statute suggests that confinement of predatory individuals dangerous to society is probably *the* major legislative purpose of the SVP statute. Such a purpose is constitutionally permissible. *Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501

(1997); *Murrell,* 215 S.W.3d at 104. The characteristics of Missouri's SVP law are similar to those of the Kansas law addressed in *Hendricks. State ex rel. Nixon v. Kinder,* 129 S.W.3d 5, 8 (Mo.App. W.D. 2003).

In *Hendricks* the Court, discussing whether isolation of an offender was a constitutionally legitimate purpose, stated:

> [w]hile we have upheld state civil commitment statutes that aim both to incapacitate and to treat, we have never held that the Constitution prevents a State from civilly detaining those for whom no treatment is available, but who nevertheless pose a danger to others.

*Id.* at 366, 117 S.Ct. 2072 (internal citation omitted). The Court also went on to say that

> it would be of little value to require treatment as a precondition for civil confinement of the dangerously insane when no acceptable treatment existed. To conclude otherwise would obligate a State to release certain confined individuals who were both mentally ill and dangerous simply because they could not be successfully treated for their afflictions.

*Id.* The Court made clear that a civil confinement statute may constitutionally be aimed at confining dangerous, predatory individuals, including untreatable individuals, in order to protect society.

Section 632.495.2 does not obligate the State to provide treatment that will produce a particular outcome. The courts recognize that not all mental conditions are susceptible to treatment. *See Seling v.Young,* 531 U.S. 250, 262, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001). The hope, of course, is that the committed individual will respond to treatment so as to cease to be a threat to society. *Murrell,* 215 S.W.3d at 105. Effective treatment will further not only the interests of the indi-

vidual, but also the interests of the State, so that the State need not indefinitely support, house, and care for the individual.

The reality, however, is that an individual who is unable to benefit from the treatment remains just as much a threat to members of society as a committed person who *refuses* to participate in treatment. The civil commitment is not an attempt to *punish* such individuals. *See Hendricks,* 521 U.S. at 367–68, 117 S.Ct. 2072; *Elliott v. State,* 215 S.W.3d 88, 93 (Mo. Banc 2007). It is an attempt to protect the public from such individuals, which the State may constitutionally seek to do.

### Conclusion

While the statute prescribes the provision of treatment, there is no statutory or constitutional bar to confinement of an SVP who cannot or will not respond to treatment. For this reason, the judgment is affirmed.

HARDWICK and WELSH, JJ., concur.