In the Matter of the Care and Treatment of James BRASCH, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 91186.

Supreme Court of Missouri,
En Banc.

Feb. 8, 2011.

Rehearing Denied March 29, 2011.

Emmett D. Queener, Public Defender's Office, Columbia, for Brasch.

Jayne T. Woods, Shaun T. Mackelprang, Attorney General's Office, Jefferson City, for the State.

ZEL M. FISCHER, Judge.

James Brasch appeals a judgment based on a jury verdict finding him to be a sexually violent predator (SVP) pursuant to § 632.495, RSMo Supp.2009.[1] He claims that this statute as applied to him violates his due process rights under the Sixth and Fourteenth Amendments of the United States Constitution and article I, section 10, of the Missouri Constitution. He also claims that the court abused its discretion in overruling its objection to the State telling the jury during closing argument that it was their responsibility to prevent another victim from being added to Brasch's list and denying his request for a mistrial. Because Brasch challenges the constitutionality of § 632.495 as applied to him, jurisdiction of this direct appeal is appropriate in this Court. MO. CONST. art. V, § 3.

## Facts

Brasch has been diagnosed with paranoid schizophrenia, antisocial personality disorder, major depressive disorder, and substance dependence for alcohol, marijuana, cocaine, and amphetamine. Brasch experiences auditory hallucinations and paranoid delusions as a result of his schizophrenia. One such delusion is that Brasch believes the CIA has been tracking him through a microchip implanted in him. He also believes the CIA has put "lenses" in his eyes capable of tracking the activities of others around him. Further, he believes the officials of St. Charles County and the CIA can physically control his body.

---

1. All references are to RSMo Supp.2009 unless otherwise indicated.

The evidence presented detailed a significant juvenile and criminal history. Prior to 1993, Brasch was accused twice of sexual abuse, but both times charges against him were dropped. He spent time in and out of both the division of youth services and jail for stealing, forgery and burglary offenses until 1993.

In 1993, Brasch entered the house of a former girlfriend and went into the bedroom of her 10–year–old daughter. He removed the daughter's underpants and began caressing her buttocks. Upon realizing what was going on, the daughter ran away from him and locked herself in the bathroom. He was arrested and pleaded guilty to third degree assault; the burglary and sexual abuse charges were dropped. He was sentenced to and served 15 days in jail.

Two months later, Brasch entered the home of a 10–year–old girl, whom he awoke by lying on top of her, kissing her, and fondling her buttocks. Brasch was arrested and pleaded guilty to first degree burglary; the prosecutor dismissed the sexual abuse charge. Brasch was sentenced to five years in the department of corrections for this incident.

Brasch was paroled in 1996. Shortly thereafter, Brasch unlawfully entered or attempted to enter at least four homes. He did not succeed in entering the first two homes, because both times he was seen by a resident and fled. He managed to enter the third house, where he found a woman asleep on the couch. Brasch digitally penetrated the woman's vagina before being chased off by her husband. Brasch then entered a fourth house through an unlocked patio door and stood over a woman who was in bed asleep. Upon waking up, the woman asked Brasch to leave and he complied. Brasch was again arrested.

Upon examination in 1997, Dr. Richard Scott determined Brasch was incompetent to stand trial. Dr. Scott diagnosed Brasch with schizophrenia and paranoid delusions. In 1999, after two years of treatment, Brasch was restored to sufficient competency to stand trial. He pleaded guilty to one count of sodomy and three counts of burglary. He was sentenced to 12 years imprisonment.

Prior to Brasch's scheduled release date in 2007, the State filed a petition to involuntarily commit Brasch to the custody of the department of mental health (DMH) as a SVP. Brasch's counsel filed a counter-petition requesting involuntary civil commitment, which was subsequently dismissed by the court.

Brasch then filed a motion to dismiss the SVP commitment petition, arguing that as a result of the cognitive problems caused by his schizophrenia, he would be unable to successfully participate in the SVP treatment program because DMH could not provide an adequate medical regimen. For this reason, Brasch argued that the SVP act, § 632.480 *et seq.*, was unconstitutional as applied to him because he was "not amenable to sex offender treatment." The court overruled Brasch's motion.

Pursuant to § 632.489, the court found probable cause to believe that Brasch was a SVP and ordered DMH to evaluate him. Dr. Scott conducted this evaluation. During the evaluation, Dr. Scott asked Brasch about his repeated behavior of breaking into homes to have sex with women. Brasch responded that he would go into the houses to have sex because "usually if [the women] see who [he is] they have sex with [him.]" Dr. Scott diagnosed this belief as a faulty core belief that demonstrated Brasch's lack of recognition of the boundary of the home. Dr. Scott noted that Brasch continued to repeat his unlawful behavior despite each situation not having the outcome he desired. Dr. Scott also believed that the mental abnormality that caused Brasch's repeated behavior was his

antisocial personality disorder. This assessment was based partly on Dr. Scott's determination that Brasch did not develop schizophrenia until 1996, when he was 29 years old.

Dr. Scott completed a risk assessment on Brasch using a combination of static and dynamic risk factors to determine whether he was more likely than not to commit predatory acts of sexual violence if not confined in a secure facility. Dr. Scott evaluated Brasch using two actuarial instruments: the RRASOR and the STATIC–99. Both of these tests placed Brasch in the high-risk range. In addition, Dr. Scott performed his own analysis of dynamic factors. Dr. Scott noted the absence of protective factors, such as parole supervision and Brasch's failure to successfully complete sex offender treatment. He also noted the presence of many risk-increasing factors, such as Brasch's sexual coping, repeated parole violations, high measure of psychopathy, non-compliance with medication, heavy use of alcohol and drugs, poor judgment, failure to learn from his mistakes, heightened impulsivity, and molestation of children younger than 12 years.

Dr. Scott also assessed the treatment that Brasch was receiving as part of his risk assessment. He determined that Brasch had the full range of medical and psychiatric treatments available to him. He determined that Brasch was receiving proper treatment and that he was at the "psychiatric baseline." However, Dr. Scott also stated that some of Brasch's delusions were fixed and were unaffected by Brasch's treatment. Dr. Scott summarized Brasch's treatment by saying that Brasch "is at the best he can be." Dr. Scott concluded that Brasch was more likely than not to commit predatory acts of sexual violence if not confined in a secure facility and that Brasch met the definition of a SVP pursuant to Missouri law.

Brasch hired Dr. William Logan to conduct a second evaluation. Dr. Logan found that the primary mental abnormality that caused Brasch's behavior was schizophrenia. Dr. Logan further noted that Brasch's schizophrenia was not controlled adequately by his treatment. In his opinion, Brasch could be treated more aggressively with medication. He also claimed that the STATIC–99 was inappropriate to administer to Brasch because of his schizophrenia.[2] For this reason, Dr. Logan did not believe there was any way to assess Brasch's risk of committing future offenses; therefore, it was impossible to say, with a reasonable degree of psychiatric certainty, that Brasch qualified for commitment as a SVP.[3]

During the closing argument, the State told the jury that it had "an important job" to do and asked the jury "not to add any more names to th[e] list" of Brasch's victims. Brasch objected that the argument was improper and moved for a mistrial; the trial court overruled both the objection and the motion for mistrial. The State then presented the rest of its closing argument, ending with:

Ladies and gentlemen, we are telling you more likely than not the science tells you that this is going to happen, this

2. Dr. Logan maintained this opinion despite during cross examination being directed to a statement from the STATIC–99 coding rules indicating that "[i]t is appropriate to use the Static–99 to assess individuals with mental health issues such as schizophrenia and mood disorders."

3. The jury was presented with the differing opinions of Dr. Scott and Dr. Logan concerning Brasch's mental abnormality and his chances of reoffending. The jury was free to believe or disbelieve all, part, or none of the testimony of either witness. *Keveney v. Missouri Military Acad.*, 304 S.W.3d 98, 105 (Mo. banc 2010).

type of behavior is going to repeat itself. You have a job, you have a responsibility and the result of your decision—there is going to be another name to this list.

After deliberations, the jury returned its verdict that Brasch was a SVP. The court entered a judgment based on the jury verdict committing Brasch into the custody of the director of the DMH for control, care, and treatment until such time as his mental abnormality has so changed that he is safe to be at large.

## Constitutional Challenge to § 632.495

Brasch challenges § 632.495 as being unconstitutional as applied to him because it violates his due process rights.

### Standard of Review

■ Constitutional challenges to a statute are reviewed *de novo*. A statute is presumed valid and will not be held unconstitutional unless it clearly contravenes a constitutional provision. The person challenging the statute's validity bears the burden of proving the act clearly and undoubtedly violates the constitution. *F.R. v. St. Charles County Sheriff's Dep't*, 301 S.W.3d 56, 61 (Mo. banc 2010) (internal citations omitted).

### Analysis

■ Section 632.495.2 states that:

If the court or jury determines that the person is a sexually violent predator, the person shall be committed to the custody of the director of the department of mental health for control, care and treatment until such time as the person's mental abnormality has so changed that the person is safe to be at large. Such control, care and treatment shall be provided by the department of mental health.

Brasch claims that this statute is unconstitutional when applied to him because DMH has chosen to only provide him with enough treatment to keep him controlled without providing him the treatment necessary to offer him the opportunity to successfully complete the Missouri Sex Offender Program (MOSOP), become well, and return to society. He claims that this violates his due process rights and that DMH must provide meaningful treatment affording a genuine opportunity for future release in order to satisfy the constitutional guarantee of individual liberty.

■ "Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." *Foucha v. Louisiana*, 504 U.S. 71, 79, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). Section 632.495.2 provides that a person such as Brasch is committed to the custody of DMH for "control, care and treatment until such time as the person's mental abnormality has so changed that the person is safe to be at large." This language indicates that the main purpose of this statute is to confine SVPs because of the danger they pose to society. *See Whitfield v. State*, 250 S.W.3d 722, 724 (Mo.App.2008). The United States Supreme Court has held the civil commitment of SVPs such as Brasch is a permissible purpose under the United States Constitution. *Kansas v. Hendricks*, 521 U.S. 346, 365–66, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).

Brasch counters that *Hendricks* obligates the State to provide treatment designed to restore him to a condition appropriate for release back into the community if such treatment is available. *Id.* at 367, 117 S.Ct. 2072. Brasch is correct that even though the main purpose of § 632.495 is to protect society, its language indicates that treatment is at least an ancillary purpose. *See id.* at 366–67, 117 S.Ct. 2072. But Brasch is incorrect that such a purpose requires that all treat-

ment under the statute must eventually lead to the individual being reintegrated into society. In upholding state civil commitment statutes that "aim both to incapacitate and to treat," the United States Supreme Court has "never held that the Constitution prevents a state from civilly detaining those for whom no treatment is available, but who nevertheless pose a danger to others." *Id.* at 366, 117 S.Ct. 2072. It has, recognized, however, that "it would be of little value to require treatment as a precondition for civil confinement of the dangerously insane when no acceptable treatment existed." *Id.* For this Court to conclude otherwise would obligate the State to release Brasch and other "confined individuals who were both mentally ill and dangerous simply because they could not be successfully treated for their afflictions." *Id.*

Brasch contends, however, that there is treatment available that would make him well so that he could be released and that he is constitutionally entitled to that treatment. He alleges that instead of providing this treatment, DMH has kept him on the same medications since 1996, even though those medications have not resolved the schizophrenia and delusions that make Brasch incapable of completing the MOSOP program. In support of this argument, Brasch cites Dr. Logan's testimony that while Brasch is not currently amenable to the MOSOP program, he might be if put on a different drug regimen. For this reason, Brasch claims that DMH is not doing everything it can to put him in a condition appropriate for release in violation of his due process rights.

█ Dr. Logan's opinion does not have to be accepted as true, but even if it were, Brasch has failed to demonstrate that the statute is unconstitutional as applied to him. "Section 632.495.2 does not obligate the State to provide treatment that will produce a particular outcome." *Whitfield,*

250 S.W.3d at 724. Other courts have recognized "that not all mental conditions are susceptible to treatment." *Id.* For this reason, the State does not need to successfully rehabilitate every SVP for § 632.492 to be constitutional. *Hendricks,* 521 U.S. at 365–66, 117 S.Ct. 2072. Instead, "the State serves its purpose of treating rather than punishing sexually dangerous persons by committing them to an institution expressly designed to provide psychiatric care and treatment." *Allen v. Illinois,* 478 U.S. 364, 373, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986).

Brasch has been committed to DMH, which is an institution expressly designed to provide psychiatric care and treatment. While the intent is for Brasch to respond to treatment provided by DMH, if he does not respond, then he "remains just as much a threat to members of society as a committed person who refuses to participate in treatment." *Whitfield,* 250 S.W.3d at 725. While § 632.495 "prescribes the provision of treatment, there is no statutory or constitutional bar to confinement of an SVP who cannot or will not respond to treatment." *Id.* Therefore, Brasch can be permanently confined if he does not respond to the treatment provided by DMH in order to protect the public from him. *Id.*

### Abuse of Discretion during Closing Argument

Brasch claims that the court abused its discretion in overruling his objection and motion for mistrial because the State violated his right to a fair and impartial trial by arguing in closing that it was the jury's responsibility to prevent another victim from being added to Brasch's list.

### Standard of Review

█ "A trial court maintains broad discretion in the control of closing arguments." *State v. Forrest,* 183 S.W.3d 218, 226 (Mo. banc 2006) (internal citation omit-

ted). "This Court reviews preserved objections to errors in closing argument under an abuse of discretion standard." *Bernat v. State,* 194 S.W.3d 863, 866 (Mo. banc 2006). This Court, therefore, will not reverse a trial court's ruling about an argument unless "it amounts to prejudicial error." *Forrest,* 183 S.W.3d at 226. The trial court's decision to sustain or overrule a motion for a mistrial also lies within its sound discretion. *Pierce v. Platte–Clay Elec. Coop., Inc.,* 769 S.W.2d 769, 778 (Mo. banc 1989). "Absent a manifest abuse of discretion, an appellate court will not interfere with the trial court's decision." *Id.* at 778.

### Analysis

 Brasch alleges that the court erred by letting the State argue that there would be another name on the list of Brasch's victims if the jury did not stop him. He argues that because the State made this argument during closing, the jury improperly based its verdict on speculation and emotion.

Brasch's argument ignores the definition of a SVP. A SVP is defined by § 632.480(5), as "any person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility." Unlike the guilt phase of a criminal case in which it would be improper for the State to speculate as to Brasch's future acts and conduct, *State v. Raspberry,* 452 S.W.2d 169, 172 (Mo.1970), Brasch's future dangerousness is not only relevant in an SVP proceeding, but it also is a necessary element that the State must prove to have him committed pursuant to § 632.495.1.

■ "Counsel is traditionally given wide latitude to suggest inferences from the evidence on closing argument." *Nelson v. Waxman,* 9 S.W.3d 601, 606 (Mo. banc 2000) (internal citation omitted). The

State's suggested inference that Brasch would add another victim to his list if released was supported by Dr. Scott's testimony that Brasch would more likely than not commit a predatory act of sexual violence if not confined to a secure facility for control, care, and treatment.

### Conclusion

Brasch has failed to demonstrate that § 632.495 is unconstitutional as applied to him or that the trial court abused its discretion in failing to sustain his objection and grant his request for mistrial relating to the State's closing argument. The judgment is affirmed.

All concur.