

# SUPREME COURT OF MISSOURI
## en banc

SHONDA AMBERS-PHILLIPS )
and RICHARD PHILLIPS, II, )
      )
      Appellants, )
      )
v. )      **No. SC94322**
      )
SSM DePAUL HEALTH CENTER, )
      )
      Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
**The Honorable Michael T. Jamison, Judge**

*Opinion issued April 28, 2015*

Shonda Ambers-Phillips and her husband, Richard Phillips, II, appeal the trial court's dismissal with prejudice of their medical malpractice and related claims against SSM DePaul Health Center for leaving foreign objects in her abdomen during surgery almost 14 years earlier.[1] The Phillipses argue that the trial court erred in not holding that Missouri's 10-year statute of repose for foreign-object medical malpractice claims was equitably tolled until Ms. Ambers-Phillips discovered the wrong, analogizing to the tolling of certain statutes of limitations until the wrong has been discovered. This Court disagrees. While statutes of limitations are subject to equitable tolling in certain circumstances, statutes of repose by their nature are not. They begin to run on the date of

---

[1] The Phillipses also filed their claims against Barnes-Jewish Hospital and Washington University in St. Louis. They later dismissed their claims against those entities.

the allegedly tortious act and provide an absolute deadline beyond which suit may not be brought. To toll them disregards this basic purpose of statutes of repose—that of providing a final time limit beyond which suit is foreclosed.

This Court also reaffirms its prior cases rejecting the Phillipses' alternative argument that statutes of repose are unconstitutional if not subject to equitable tolling. While the Phillipses are correct that the right to bring suit for medical malpractice is one protected by the right to jury trial and may not be unreasonably foreclosed, this Court rejects the argument that it is a fundamental right to which heightened scrutiny applies. The Phillipses, therefore, must show that the legislature's decision to adopt a statute of repose was without rational basis. They have failed in meeting this burden. Statutes of limitations always have limited the time period for filing suit, and when the legislature extended the statute of limitations for medical malpractice by adopting a discovery rule, its decision also to adopt an absolute limit on the time within which the action could be filed was not unreasonable. Neither did it violate the prohibition against special laws or the guarantee of open courts. For these reasons, the judgment is affirmed.

## I.    *FACTUAL AND PROCEDURAL HISTORY*

On September 13, 1999, Ms. Ambers-Phillips was in a car accident. She underwent an exploratory laparotomy at SSM DePaul. Nearly 14 years later, in June 2013, she underwent another exploratory laparotomy at a different St. Louis-area hospital because she was having pain in her side. According to the petition, during the surgery her doctors found four foreign objects that had been left inside her abdomen during the 1999 surgery. She sued SSM DePaul in 2013, alleging that it committed medical

malpractice in failing to account for and remove these four foreign objects during her 1999 laparotomy.[2] Mr. Phillips brought a loss of consortium claim.

SSM DePaul moved to dismiss the Phillipses' claims on numerous grounds, including that they were barred by section 516.105's 10-year statute of repose for claims of medical negligence involving the leaving of foreign objects in the body.[3] The trial court sustained SSM DePaul's motion to dismiss with prejudice, concluding that, because the Phillipses filed their action 14 years after the date of the alleged negligence, section 516.105's statute of repose applied, making their claims time-barred and subject to dismissal. The trial court also determined that the Phillipses' constitutional claims—that the statute violated due process, equal protection, and the Missouri Constitution's open courts and special legislation provisions—failed to present a "real and substantial" constitutional challenge and were, in any event, not well taken. The Phillipses appeal. Because this case involves a challenge to the constitutional validity of section 516.105, appeal is directly to this Court. *Mo. Const. art. V, § 3.*

## II.  STANDARD OF REVIEW

This Court reviews a trial court's grant of a motion to dismiss a petition de novo. *Lynch v. Lynch, 260 S.W.3d 834, 836 (Mo. banc 2008).* This Court also reviews the constitutional validity of a statute de novo. *In re Brasch, 332 S.W.3d 115, 119 (Mo. banc 2011).* A statute is presumed to be valid, and the Court will uphold it unless it "clearly

---

[2] Ms. Ambers-Phillips also pleaded a cause of action for *res ipsa loquitor* in leaving the objects in her body during the surgery. The trial court dismissed that count. Ms. Ambers-Phillips does not claim any independent error in that dismissal, and it is not further addressed.

[3] All references are to RSMo Supp. 2013 unless otherwise noted.

and undoubtedly" conflicts with the constitution. *Prokopf v. Whaley, 592 S.W.2d 819, 824 (Mo. banc 1980)*. The Court "resolve[s] all doubt in favor of the [statute's] validity." *Westin Crown Plaza Hotel Co. v. King, 664 S.W.2d 2, 5 (Mo. banc 1984)*.

## III.   A STATUTE OF REPOSE IS NOT SUBJECT TO EQUITABLE TOLLING

### A.  Historical Treatment of Time for Bringing Foreign Object Cases In Missouri

From 1921 until 1976, cases alleging that a foreign object was left in the body were subject to the general statute of limitations governing certain intentional torts and medical malpractice, which stated in relevant part:

> Within two years:  An action for libel, slander, assault, battery, false imprisonment or criminal conversation.  All actions against physicians, surgeons … hospitals … for damages for malpractice, error, or mistake shall be brought within two years from the date of the act of neglect complained of.[4]

Applying this statute to a medical malpractice case, *Laughlin v. Forgrave, 432 S.W.2d 308, 310, 313 (Mo. banc 1968)*, held that the statute barred the suit brought by a patient in 1963 against the doctors who had left a foreign object in her back during surgery that occurred in 1951. *Laughlin* rejected the patient's argument that the statute of limitations should have been tolled from 1951 until her discovery of the foreign object in 1962. *Id. at 313-14*.  In so doing, *Laughlin* said her argument in favor of a discovery rule "is appealing and has some force, so far as justice is concerned; in that respect the conclusion we reach is distasteful to us." *Id. at 314*.  Nonetheless, the plaintiff could not recover, for:

---

[4] This language was first adopted in 1921 as section 1319a, and later codified as section 864 in 1929 and as section 1016 in 1939.  Since at least 1949, the general two-year statute of limitations has been codified as section 516.140.

4

> [T]he legislative branch of the government has determined the policy of the state and clearly fixed the time when the limitation period begins to run against actions for malpractice. This argument addressed to the court properly should be addressed to the General Assembly. Our function is to interpret the law; it is not to disregard the law as written by the General Assembly.

*Id.* Eight years later, in 1976, the legislature took action that in part addressed the unfairness that had concerned this Court in *Laughlin* by adopting section 516.105, RSMo Supp. 1976. That section sets out a discovery rule for foreign object medical malpractice cases as part of the medical malpractice statute of limitations, stating in relevant part:

> All actions against physicians, hospitals, … and any other entity providing health care services and all employees of any of the foregoing acting in the course and scope of their employment, for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of, except that … *in cases in which the act of neglect complained of [is] introducing and negligently permitting any foreign object to remain within the body of a living person, the action shall be brought within two years from the date of the discovery of such alleged negligence*, or from the date on which the patient in the exercise of ordinary care should have discovered such alleged negligence, whichever date first occurs ….

(Emphasis added). As this Court later noted in *Weiss v. Rojanasathit, 975 S.W.2d 113 (Mo. banc 1998),* by this enactment the legislature provided:

> that in cases such as *Laughlin*, in which the act of neglect complained of is introducing and negligently permitting any foreign object to remain within the body of a living person, the statute commences to run from the date of discovery. *Section 516.105.*

*Id. at 117.* Under section 516.105, when the negligent act is discovered, the statute of limitations begins running.

The discovery rule adopted in the 1976 revision to section 516.105 was not unlimited, however. In a classic example of a statute of repose, its final clause provided

5

that no suit could be brought more than 10 years after the foreign object was left in the body, without regard to whether the negligent act had at that point been discovered:

> [B]ut in no event shall any action for damages for malpractice, error, or mistake be commenced after the expiration of ten years from the date of the act of neglect complained of.

*§ 516.105, RSMo Supp. 1976.*

Section 516.105 was amended in 1999, but the time limit for bringing suit in foreign object cases remained the same:

> within two years from the date of the discovery of such alleged negligence, or from the date on which the patient in the exercise of ordinary care should have discovered such alleged negligence, whichever date first occurs; … In no event shall any action for damages for malpractice, error, or mistake be commenced after the expiration of ten years from the date of the act of neglect complained of ….

*§ 516.105, RSMo Supp. 1999.*[5]

### B. The Statute of Repose in Section 516.105

This Court first must decide whether the Phillipses' suit was timely brought under section 516.105 as written or as modified by the doctrine of equitable tolling. The Phillipses' suit was filed on November 21, 2013, within two years from the date Ms. Amber-Phillips discovered, in June 2013, that four foreign objects had been left in her body. But this was not within 10 years after she alleges the foreign objects were left in her abdomen during her surgery at DePaul in September 1999. The Phillipses acknowledge that this means that section 516.105's statute of repose appears to bar their claims. But they argue the 10-year repose period should be equitably tolled until the day

---

[5] The legislature amended other portions of section 516.105 in 2005 in regard to matters not relevant here.

Ms. Ambers-Phillips discovered the wrong. Neither the cases the Phillipses cite nor the other relevant Missouri cases support their tolling argument.

In support of their argument, the Phillipses note that, when it applies, equitable tolling "pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez, 134 S. Ct. 1224, 1231-32 (2014).* They note that Missouri has recognized the concept of equitable tolling can be applied to statutes of limitations when it is unfair to hold the plaintiff's claim was barred. *See Rolwing v. Nestle Holdings, Inc., 437 S.W.3d 180, 184 (Mo. banc 2014).* Similarly, in *Ross v. Kansas City General Hospital & Medical Center, 608 S.W.2d 397 (Mo. banc 1980),* this Court explained the fairness principles that supported the legislature's adoption of a discovery rule in section 516.105 in regard to the statute of limitations in foreign object cases, stating:

> One reason why the legislature acted may have been that the legislature considered it particularly unfair that a claimant in whom a foreign object has been left should be barred by the statute of limitations even before there was any discovery of the foreign object, as happened to plaintiff in [*Laughlin v. Forgrave, 432 S.W.2d 308 (Mo. 1968)*]. Or the legislature might have believed it was proper to measure from the time of discovery in the foreign object cases rather than from the time of the act of neglect, because there is less likely to be as great a problem with stale evidence when a foreign object is left in the body than in the other types of malpractice cases.

*Id. at 399.* Combining these principles, the Phillipses argue that the same fairness concerns should be applied here and compel "the intervention of equitable tolling of the statute of repose."

While the Phillipses are correct that this Court's prior cases have recognized the fairness of adopting a discovery rule and of equitable tolling in regard to the statute of limitations, they fail to note that these cases have emphasized that it is up to the legislature to determine whether to adopt a discovery rule or equitable tolling in a particular case because "a 'statute of limitations may be suspended or tolled only by specific disabilities or exceptions enacted by the legislature and the courts are not empowered to extend those exceptions.'" *Rolwing, 437 S.W.3d at 184, quoting Shelter Mut. Ins. Co. v. Dir. of Revenue, 107 S.W.3d 919, 923 (Mo. banc 2003)*; *see also Ross, 608 S.W.2d at 399.*

The Phillipses' argument also fails to consider the philosophical and conceptual differences between statutes of limitations and statutes of repose. Equitable tolling is a term almost universally used in the context of statutes of limitations. This is because, unlike statutes of limitations, statutes of repose "by their nature reimpose on some plaintiffs the hardship of having a claim extinguished before it is discovered, or perhaps before it even exists." *W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 30, at 168 (5th ed. 1984).* The United States Supreme Court itself recently has explained why these differences between statutes of limitations and statutes of repose make the latter incompatible with equitable tolling, stating:

> Statutes of repose, on the other hand, generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control. …
> Equitable tolling is applicable to statutes of limitations because their main thrust is to encourage the plaintiff to "pursu[e] his rights diligently," and when an "extraordinary circumstance prevents him from bringing a timely action," the restriction imposed by the statute of limitations does not further the statute's purpose. [*Lozano*, *134 S. Ct. at 1231–32*]. But a statute of

8

repose is a judgment that defendants should "be free from liability after the legislatively determined period of time, beyond which the liability will no longer exist and will not be tolled for any reason." *C.J.S. § 7, at 24*.

*CTS Corp. v. Waldburger, 134 S. Ct. 2175, 2183 (2014)*.[6]

Although not using the term "equitable tolling," this Court applied these concepts in rejecting an argument that a 10-year statute of repose in a construction case was unreasonable because it cut off the plaintiffs' cause of action before it arose, stating;

> Plaintiffs' argument [citing to statute of limitations cases] proves too much; it fails to distinguish the basic difference between a statute of limitations and a statute of repose. A statute of limitations allows the cause of action to accrue and then cuts off the claim if suit is not filed within a certain period of time. A statute of repose eliminates the cause of action altogether after a certain period of time following a specified event; in this instance, the completion of construction. More importantly, the cause of action is eliminated before the plaintiffs' injury and thus before plaintiffs' cause of action accrues.

*Blaske v. Smith & Entzeroth, Inc., 821 S.W.2d 822, 834 (Mo. banc 1991)*.

Rather than discuss or attempt to distinguish *Blaske*, the Phillipses instead ask this Court to look at dicta in the decision of the New Jersey Supreme Court in *R.A.C. v. P.J.S, Jr., 927 A.2d 97 (N.J. 2007)*. Even under New Jersey law, however, *R.A.C.* recognized

---

[6] Even more basically, the Phillipses do not address how long after discovery of the wrongful act a plaintiff would have before the statute of repose took effect, but from the context it seems they would argue that the full statutory period of limitations would then have to run before the statute of repose would bar suit – certainly no lesser time period is suggested and to select one would be arbitrary. But that would effectively write the statute of repose out section 516.105, for that statute already gives a plaintiff two years from the time of discovery of the wrong in which to file suit. That is, under the Phillipses' reading, if the statute of repose language were removed from the statute, the result would be the same as if it remained in the statute, for in either case a plaintiff would have two years from the time of discovery of the wrong. "[T]his Court will not interpret the statute in a way that renders some phrases mere surplusage." *Farish v. Missouri Dep't of Corr., 416 S.W.3d 793, 796 (Mo. banc 2013)*.

9

that equitable tolling usually is incompatible with a statute of repose, citing United States Court of Appeals decisions from the Fourth, Seventh, and Tenth Circuits. *Id. at 105-06.* The court simply said that under the particular wording of its state constitution it thought tolling would be permissible in the extraordinary circumstance where the court believed that tolling was consistent with legislative intent. *Id. at 108. R.A.C.* did not find that to be the case under the facts before it and, therefore, denied tolling. *Id. at 109-10.*[7]

Similarly, here, the Phillipses cite to nothing in section 516.105 that indicates a legislative intent to equitably toll the statute of repose until a patient discovers a foreign object left in his or her body. To the contrary, the legislature specifically provided that claims of medical malpractice are barred by the statute of repose once 10 years have passed from the time of the negligent act, even if the plaintiff has not at that point discovered the wrong. This is a clear and specific statute of repose, and it bars the Phillipses' claims.

## IV.     SECTION 516.105'S STATUTE OF REPOSE DOES NOT VIOLATE THE MISSOURI CONSTITUTION'S EQUAL PROTECTION CLAUSE OR OPEN COURTS PROVISION

The Phillipses alternatively argue that, if section 516.105's statute of repose is not

---

[7] *R.A.C.* said:

> The primary consideration underlying a statute of repose is "fairness to a defendant," the belief that there comes a time when the defendant "'ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations ….'" Because of the deference owed to a legislative enactment, courts generally do not expand the limitations period defined by a statute of repose unless the Legislature carved out exceptions that permit for tolling.

*927 A.2d at 105* (internal citation omitted).

equitably tolled, then it violates the Missouri Constitution's equal protection clause and guarantee of open courts.

The equal protection clause of the Missouri Constitution provides that "all persons are created equal and are entitled to equal rights and opportunity under the law." *Mo. Const. art. I, § 2*. In considering whether a statute violates the clause, this Court first "determines whether the statute contains a classification that 'operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution.'" *Glossip v. Missouri Dep't of Transp. & Highway Patrol Emps. Ret. Sys., 411 S.W.3d 796, 801 (Mo. banc 2013).* In most other instances, the statute is presumed constitutional and Missouri courts will apply a rational basis test under which "the statute will be [held] valid as long as it bears a reasonable relationship to a legitimate state purpose." *Id.*; *accord State v. Pike, 162 S.W.3d 464, 470 (Mo. banc 2005)*.

### A. *Open Courts Provision is Inapplicable*

The Phillipses ask this Court to apply strict scrutiny to the statute of repose at issue here even though they do not fall within any traditional suspect class, nor do they assert a right this Court previously has recognized as fundamental. They argue that an expansion of what constitutes a fundamental right to bring their claims is required by the open courts provision of the Missouri Constitution, which guarantees that "the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay." *Mo. Const. art. I, § 14*. The Phillipses argue that, because the

11

statute of repose bars their cause of action before it even vests or accrues, it denies them their guaranteed right under article I, section 14 of access to the courts and a certain remedy for the wrong committed against them by defendant. The dissenting opinion agrees.

This argument misconstrues the open courts provision. It is well-settled that "[a]n open courts violation is established upon a showing that: (1) a party has a recognized cause of action; (2) … the cause of action is being restricted; and (3) the restriction is arbitrary or unreasonable." *Snodgras v. Martin & Bayley, Inc., 204 S.W.3d 638, 640 (Mo. banc 2006)*. In other words, as this Court held in *Harrell v. Total Health Care, Inc., 781 S.W.2d 58, 62 (Mo. banc 1989)*, the right of access to the courts set out in the open courts provision of the Missouri Constitution "means simply the right to pursue in the courts the causes of action the substantive law recognizes." Artificial barriers, such as the requirement that one appear before a medical review board prior to filing suit, violate this provision for they bar a plaintiff from bringing a valid and recognized claim. *State ex rel. Cardinal Glennon Mem'l Hosp. for Children v. Gaertner, 583 S.W.2d 107, 109-10 (Mo. banc 1979)*.

Statutes of repose do not bar the bringing of a valid cause of action. As this Court noted in *Blaske* in considering whether the open courts provision was violated by the 10-year statute of repose for builders and designers set out in section 516.097, RSMo 1986, the failure to bring suit within 10 years extinguishes the cause of action. Therefore, because the substantive statutory law had extinguished any right to sue at the end of 10

12

years, the plaintiffs had no cause of action to bring by the time they discovered the wrong at a later point. *821 S.W.2d at 833.*

The principles set out in these cases apply here. The open courts guarantee applies only to recognized causes of action; it does not guarantee access to the courts once the statute of repose extinguishes the cause of action. If the Phillipses' right to sue had accrued prior to the time the statute of repose applied, then the open courts provision would be applicable and this Court would examine whether the statute unreasonably restricted their right to bring suit. *Cf. Laughlin, 432 S.W.2d at 314* (statute of limitations must allow reasonable time to bring suit). Similarly, if the legislature had prohibited recovery for personal injury, the due process principles recognized by the United States Supreme Court in *Poindexter v. Greenhow, 114 U.S. 270, 303 (1885)*, and relied on by the dissent certainly would be implicated. But, here, the legislature provided a reasonable, 10-year period in which to sue. That period concluded before the Phillipses discovered the wrong; as a result, the Phillipses' right to sue never accrued and, therefore, never vested. [8]

---

[8] The principal non-Missouri cases that the Phillipses argue reach a contrary result either involve a differently worded constitutional provision or involve a statute of limitations rather than a statute of repose and, therefore, are not persuasive. For example, *Kenyon v. Hammer, 688 P.2d 961 (Ariz. 1984),* involved a statute of limitations, not a statute of repose. It found strict scrutiny applied to medical malpractice claims under the Arizona Constitution's unique "non-abrogation" clause, which protects an existing cause of action from abrogation by the legislature. *See id. at 966-67.* While this is similar to (but differently worded from) Missouri's open court's provision, *Kenyon*'s reasoning does not apply when the issue is whether the legislature can enact a statute of repose, not an allegedly unreasonable statute of limitations. Further, *Baker v. University Physicians Healthcare, 296 P.3d 42, 51-52 (Ariz. 2013),* recently clarified that, under the federal and the Arizona equal protection clauses, medical malpractice claimants are not in a suspect

As discussed above, the United States Supreme Court has recognized that the effect of a statute of repose is to extinguish an existing cause of action, and it has applied such statutes. *See CTS Corp., 134 S. Ct. at 2187-88.* A statute of repose is not inconsistent with due process. The open courts provision is inapplicable to the Phillipses' claim, for it applies only to causes of action that have accrued, not to one that, like that of Ms. Ambers-Phillips, was barred before it had a chance to arise under a statute that otherwise allows a reasonable period in which to bring suit.

## B. Equal Protection Clause Inapplicable As Fundamental Right Not Violated

Absent the ability to rely on the open courts provision, the Phillipses are unable to support their argument that the right to bring a medical malpractice action is fundamental. To the contrary, fundamental rights normally include free speech, freedom of travel, the right to personal privacy, and other rights that are "objectively, deeply rooted in the nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Doe v. Phillips, 194 S.W.3d 833, 842 (Mo. banc 2006).* That is why this Court previously has rejected nearly identical arguments that the right to sue for medical malpractice can fit within this narrow category of fundamental rights.

---

class, nor is the right to bring a medical malpractice action a fundamental right. Therefore, the court held, statutory restrictions on bringing such claims will be analyzed under a rational basis test. *Id. at 52-53. White v. State, 661 P.2d 1272 (Mont. 1983),* also relied on by the Phillipses, similarly has been limited; *Meech v. Hillhaven West, Inc., 776 P.2d 488, 491-92 (Mont. 1989),* noted that Montana's open courts provision allows suit only for recognized common law or statutory claims, and there is no independent fundamental right to full legal redress.

14

For instance, in *Adams ex rel. Adams v. Children's Mercy Hospital, 832 S.W.2d 898 (Mo. banc 1992), overruled in part by Watts v. Lester E. Cox Medical Centers, 376 S.W.3d 633, 645-46 (Mo. banc 2012)* (overruling unrelated portion of *Adams* approving statutory caps), this Court specifically rejected the argument that the open courts provision guarantees victims of medical malpractice an unlimited time to sue.

This aspect of *Adams* was reaffirmed in *Batek v. Curators of University of Missouri, 920 S.W.2d 895 (Mo. banc 1996).* *Batek* involved a suit by a woman who had experienced malpractice when 20 years old. She argued that it violated equal protection not to toll the running of the statute of limitations as to her until she was 21 when it was tolled until age 21 for minors under the age of 18 who were the victims of malpractice. *Id. at 898.* In rejecting the plaintiff's argument that strict scrutiny should be applied to the statute of limitations that otherwise barred her claims, the Court found that the statute did not "impinge upon Ms. Batek's fundamental rights" because those rights include "only basic liberties explicitly or implicitly guaranteed by the United States Constitution." *Id. at 898*; *see also Adams, 832 S.W.2d at 903.*

This Court applied the reasoning of *Adams* and *Batek* to the 10-year statute of repose for architects, engineers, and builders at issue in *Blaske* under section 516.097. *Blaske* upheld the statute of repose after reaffirming that persons claiming personal injury or property damage due to defects in improvements on real property do not allege violation of a fundamental right. *821 S.W.2d at 829.* The Court found that the statute of repose easily met the rational basis test. *Id. at 829-30.*

15

The Phillipses alternatively argue that, even if their right to bring suit is not otherwise fundamental, medical malpractice victims generally are a suspect class. But, as this Court noted in *Mahoney v. Doerhoff Surgical Services, Inc.*:

> [A] suspect classification is one whose purpose or effect is to create classes based on certain characteristic[s] that are inherently suspect in a constitutional sense. They are classes, such as those based upon race, national origin or illegitimacy, which because of historical reasons, "'command extraordinary protection from the majoritarian political process.'"

*807 S.W.2d 503, 512 (Mo. banc 1991)* (internal citations and emphasis omitted). For these reasons, *Mahoney* rejected the argument that medical malpractice claimants were a suspect class entitled to strict scrutiny analysis. *Id.* *Blaske* similarly held that:

> Neither a "suspect class" nor a "fundamental right" is at issue in this case. … a suspect classification is one that is inherently suspect in a constitutional sense. These are classes such as those based upon race, national origin, or illegitimacy which, because of historical reasons, need special protection from a political process controlled by the majority. *Mahoney v. Doerhoff Surgical Services, 807 S.W.2d 503, 512 (Mo. banc 1991).*

*Blaske, 821 S.W.2d at 829*; *accord Batek, 920 S.W.2d at 898* ("Further, this Court has previously and repeatedly rejected the argument that victims of medical malpractice are members of a suspect class").[9] This Court reaffirms that medical malpractice victims do

---

[9] In *Crane v. Riehn*, this Court rejected a similar claim that the wrongful death act discriminates against a decedent's minor children and spouse when the decedent's parents also survive. The Court explained how narrow the suspect class analysis is, stating:

> It should be emphasized that the classification of those entitled to sue under the wrongful death statute does not involve interference with the exercise of a "fundamental" right nor discriminate as to classes having the "traditional indicia of suspectness" for equal protection considerations. The designated classes are "not saddled with such disabilities, or subjected to such a history

16

not fall into a class of persons who command extraordinary protection from the majoritarian political process and, hence, do not constitute a suspect class.

The Phillipses argue that medical malpractice victims, nonetheless, should be considered a suspect class because the application of the statute of repose disproportionately affects the poor, disabled, and elderly because they are less likely to have good or frequent medical care and so are less likely to discover the foreign object within the 10-year repose period. Yet the Phillipses do not develop this argument by citing to any case holding that the elderly or poor are a suspect class in any context, much less in regard to their right to bring medical malpractice actions. Moreover, Ms. Ambers-Phillips herself does not claim she was unable to learn of the foreign objects left in her body because she was poor, elderly, or disabled. This argument is of no assistance.

For these reasons, the Phillipses have failed to show that they fall within a traditionally suspect class or that they are burdened with disabilities or a history of discrimination that entitles them to extraordinary protection. Neither have they shown that the right of access to open courts guarantees them the right to bring suit free of the limitations imposed by a statute of repose. Consequently, as in *Blaske*, *Adams*, *Batek* and similar cases, this Court applies a rational basis test in determining whether the statute of repose contained in section 516.105 violates their equal protection rights. The rational

of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majorit[a]rian political process."
*568 S.W.2d 525, 530 (Mo. banc 1978)*; *see also Adams, 832 S.W.2d at 903.*

17

basis test "is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective." *Mahoney, 807 S.W.2d at 512*. Under the rational basis test, this Court will uphold the law if it is "rationally related to a legitimate state interest." *Id.*; *accord Batek, 920 S.W.2d at 898-99.*

The Phillipses argue that the statute of repose does not pass the rational basis test because it arbitrarily and irrationally discriminates against certain victims of medical malpractice.[10] If the legislature entirely eliminated the right to bring suit for medical malpractice, or left them an unreasonably short period in which to bring suit, their argument might have merit. But, here, the 10-year statute of repose reflects a reasonable balance struck by the legislature between the right of those injured by medical malpractice to discover their injuries and the concern that medical defendants should be free from worry about liability for past acts after a reasonable period of time. *CTS Corp., 134 S. Ct. at 2183*. In that light, the statute of repose set out in section 516.105 is rationally related to a legitimate state interest. Accordingly, it does not violate the Missouri Constitution's equal protection clause or open courts provision.

## V. *SECTION 516.105 IS NOT AN INVALID SPECIAL LAW*

The Missouri Constitution mandates that the legislature "shall not pass any local or special law … for limitation of civil actions." *Mo. Const. art. III, § 40(6)*. The

---

[10] The Phillipses also assert that their claims fall within the limited class of claims to which the courts give intermediate scrutiny. In a small number of cases involving quasi-suspect classes (such as those concerning gender discrimination) a court will apply intermediate scrutiny. *See, e.g., Glossip, 411 S.W.3d at 802.* The Phillipses cite no principles of Missouri law that would support application of intermediate scrutiny to medical malpractice victims, and that argument also is rejected.

18

Phillipses argue that the statute of repose at issue here is a special law because it applies only to malpractice victims who have foreign objects left in their body.

This Court has defined special laws as those that "include[] less than all who are similarly situated …, but a law is not special if it applies to all of a given class alike and the classification is made on a reasonable basis." *Blaske, 821 S.W.2d at 831* (internal quotation marks omitted). This test for whether a law is a special law is similar to the test for determining whether a law violates the equal protection clause: if a classification is made on a reasonable basis or applies to all in a given class, then it is not an improper special law. *See id. at 831-32.*

In *Batek,* this Court rejected a similar "special law" objection to a statute of limitations for medical malpractice claims that began to run at age 18 years for persons who were 18 years or older at the time of the tortious conduct, but which began to run only at age 21 years for those who were younger than age 18 years at the time of the wrong. Ms. Batek was 20 years old at the time of the tort. This Court held that:

> A "special law" is a law that "includes less than all who are similarly situated … but a law is not special if it applies to all of a given class alike and the classification is made on a reasonable basis." "[T]he test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes, that makes it special, but what it excludes."
>
> Contrary to Ms. Batek's assertion, section 516.170 does not impermissibly exclude or separately classify any member of a given group. … There are valid reasons for the general assembly to have provided for a different time for the commencement of the limitations period for plaintiffs in medical malpractice cases.

*920 S.W.2d at 899* (internal citation omitted).

19

Similarly, *Blaske* rejected the argument that a statute of repose designated for building designers and builders was an invalid special law. *821 S.W.2d at 832.* It held that, whether one considered designers and builders to be in a different class than other tort defendants or whether one considered them to be in the same class but reasonably treated differently, the result was the same—because the legislature had a reasonable basis to distinguish between designers and builders as compared to owners and materialmen, the statute was not an invalid special law. *Id.*

Similarly, here, as noted earlier, the legislature had a reasonable basis to impose a 10-year statute of repose when they adopted a discovery rule for medical malpractice actions involving foreign objects. The question for this Court is not whether it believes that not adopting a statute of repose would be better or fairer, but whether adoption of the repose period for foreign object suits draws a distinction without rational basis. It was not irrational for the legislature to balance a victim's right to discover his or her injury with a defendant's right to closure and to determine that 10 years was the outside limit for discovery of a cause of action for leaving a foreign object in a patient's body.

## VI. DUE PROCESS IS NOT VIOLATED

The Phillipses lastly allege that the statute of repose in section 516.105 violates the provision of the Missouri Constitution guaranteeing that "no person shall be deprived of life, liberty or property without due process of law." *Mo. Const. art. I, § 10.* In effect, they argue that the section 516.105 violates the due process clause because an individual has a vested property interest in a cause of action that has arisen that cannot be divested by a statute of repose before the person has discovered the foreign object's existence and

20

has had the opportunity to file suit. This argument confuses statutes of limitations with statutes of repose. As discussed earlier, while a statute of limitation allows a cause of action to accrue and then blocks the claim if the suit is not filed within a legislatively determined time period, a statute of repose "eliminates the cause of action altogether after a certain period of time following a specified event," with the specified event in this case being the alleged medical malpractice. *Blaske, 821 S.W.2d at 834*. Therefore, "the cause of action is *eliminated before* the plaintiffs' injury and thus *before* plaintiffs' cause of action *accrues*." *Id.* (emphasis added). As *Blaske* recognized, because the plaintiff's claim is barred by the statute of repose before the claim accrues, the plaintiff never acquires a vested property right to which due process could apply. *Id.* For these reasons, the statute of repose in section 516.105 did not violate the Phillipses' due process rights.

## VII.   CONCLUSION

For the reasons stated above, the judgment is affirmed.

_____
**LAURA DENVIR STITH, JUDGE**

Russell, C.J., Breckenridge, Fischer, Draper and
Wilson, JJ., concur; Teitelman, J., dissents in
separate opinion filed.

21



# SUPREME COURT OF MISSOURI
## en banc

SHONDA AMBERS-PHILLIPS )
and RICHARD PHILLIPS, II, )
                                  )
      Appellants, )
                                  )
v. )       No. SC94322
                                  )
SSM DePAUL HEALTH CENTER, )
                                  )
      Respondent. )

## DISSENTING OPINION

The principal opinion holds that the legislature is free to extinguish Ms. Ambers-Phillips' cause of action for the negligent infliction of bodily injury even when, as in this case, it was practically impossible for her to discover that foreign objects had been left in her body until well after a 10-year period of repose. While the Missouri Constitution vests the General Assembly with expansive legislative authority, the people of Missouri also expressly reserved their right to seek a "certain remedy" for their injuries. As applied to Ms. Ambers-Phillips, practical effect of the 10-year statute of repose is nothing short of the outright abrogation of her right to seek a remedy for the negligent infliction of serious bodily injury. For these reasons, I respectfully dissent.

The principal opinion reasons, consistent with prior case law, that article I, section 14 does not guarantee access to the courts once a statute of repose extinguishes the cause of action.  In other words, article I, section 14 provides no substantive limitation on the legislature's authority to extinguish Ms. Ambers-Phillips' cause of action for the negligent infliction of bodily injury.  This rationale is, as the principal opinion notes, supported by this Court's jurisprudence.  This rationale is not, however, compelled by the text of article I, section 14, which provides:

> That the courts of justice shall be open to every person, and certain
>
> remedy afforded for every injury to person, property or character, and
>
> that right and justice shall be administered without sale, denial or
>
> delay.

For purposes of this case, the operative clause is that there shall be "certain remedy afforded for every injury to person ...."  While this Court has held that article I, section 14 limits legislative authority to arbitrarily or unreasonably bar individuals or classes of individuals from accessing the courts to enforce recognized causes of action for personal injury, *Kilmer v. Mun*, 17 S.W.3d 545, 549 (Mo. banc 2000), this Court has not recognized that the text of the "certain remedy" clause positively guarantees a right to a remedy.  The legislative prerogative to enact statutes dealing with specific policy concerns is consistent with and not unduly hampered by recognizing that the people of Missouri, by including the "certain remedy" clause in their Constitution, expressly reserved their right to some form of an adequate legal remedy for bodily injury.

2

In addition to the text of article I, section 14, the nature of the open courts provision supports the conclusion that there is some substance behind it. This Court has characterized article I, section 14 as a "second due process clause to the state constitution." *Goodrum v. Asplundh Tree Expert Co*., 824 S.W.2d 6, 10 (Mo. banc 1992). The due process clause has both a procedural and substantive component. *Doe v. Phillips*, 194 S.W.3d 833, 842 (Mo. banc 2006). Under a due process analysis, "[n]o one would contend that a law of a State, forbidding all redress by actions at law for injuries to property, would be upheld in the courts of the United States, for that would be to deprive one of his property without due process of law." *Poindexter v. Greenhow*, 114 U.S. 270, 303, 5 S.Ct. 903 (1885). If the state cannot deny a remedy for injuries to property, then surely it cannot deny a remedy for a negligently inflicted bodily injury without violating the specific constitutional right to a "certain remedy" for "every injury to person."

Finally, the existence of a substantive component within the certain remedy clause is confirmed by the case law from other states with constitutional provisions similar to Missouri's open courts provision. At least 39 state constitutions have a similar open courts provision. David Schuman, The Right to a Remedy, 65 Temp. L. Rev. 1197, 1201 (1992). Many of these states "apparently recognize the doctrine of a substitute remedy, or quid pro quo, to justify legislative change." Thomas R. Phillips, The Right to a Constitutional Remedy, 78 N.Y.U. L. Rev. 1309, 1335 (2003). The requirement of an adequate substitute remedy recognizes that a meaningful state constitutional guarantee of a certain remedy for bodily injury must include some minimal substantive guarantee of a reasonably accessible legal remedy for bodily injuries. Therefore, consistent with the text

3

and nature of the article I, section 14 right to a remedy clause, I would hold that the Missouri Constitution requires the provision of an adequate substitute remedy when a statute has the effect of extinguishing an injured person's right to a "certain remedy" for negligently inflicted bodily injury.

While there may be perfectly good reasons to adopt statutes of repose in some cases, the facts of this case illustrate the problem of redefining individual constitutional rights according to political whim. This is not a case about defective building design, an inaccurate real estate survey or questionable legal advice. This is not a case about a purely financial loss in which the parties are better off by writing it off. This is not a case where the passage of time raises doubts about how Ms. Ambers-Phillips was injured. Instead, this is a case about the violation of bodily integrity and the right to have some practically available remedy for a bodily injury that no one disputes. If the legislature can take that away, then the textual guarantee of a "certain remedy afforded for every injury to person" is not an individual constitutional right but is, instead, a privilege subject to legislative repeal.

I would hold that the 10-year statute of repose in section 516.105 is unconstitutional as applied to Ms. Ambers-Phillips because the statute bars her from asserting a recognized cause of action for bodily injury before she possibly could have

4

discovered her injury.  The judgment should be reversed and the case remanded to permit Ms. Ambers-Phillips to exercise her constitutional right to seek a remedy for her injury.

_____
RICHARD B. TEITELMAN, JUDGE