CATHERINE S. HEDRICK (NOW BOWLING) v. MARVIN A. HEDRICK

No. 8730DC585

(Filed 17 May 1988)

1. **Divorce and Alimony § 25.12; Parent and Child § 6.4— visitation rights of grandparents after adoption—fitness of grandparents**

   In an action by paternal grandparents to gain visitation rights after the father signed a consent to adoption, the trial court's findings of fact as to the visitation that had previously occurred between the children and the grandparents established the fitness of the grandparents and that the welfare of the children was subserved.

2. **Adoption § 2— grandparents' visitation rights—motion to intervene allowed**

   The trial court did not err in an adoption action by allowing the grandparents to intervene seeking visitation pursuant to N.C.G.S. § 50-13.2A where the trial judge addressed the issue of whether the grandparents had a right to intervene based on the pleadings before it without the necessity of a preliminary hearing. The right to institute an action under N.C.G.S. § 50-13.2A mandates a right to intervene on behalf of the grandparents.

3. **Rules of Civil Procedure § 19— adoption—grandparents' visitation—adoptive father not necessary party**

   The trial court did not err by not joining the prospective adoptive father in an action by the paternal grandparents for visitation rights where the adoption was not finalized until one month after the entry of judgment. Whatever rights the adoptive father was to gain had not yet vested and the court could make a complete determination of the issues before it without joining the adoptive father as a necessary party.

4. **Constitutional Law § 20— adoption—visitation rights of grandparents—reasonable basis for classification**

   There is a reasonable basis for the classification elicited in N.C.G.S. § 50-13.2A between grandparents whose grandchildren are adopted by two people, neither of whom is a relative or a stepparent of the children, and grandparents whose grandchildren are adopted by two people, one of whom is a relative or stepparent of the children. The classification does not violate the equal protection guarantees of either the State or Federal Constitutions. Art. I, § 19, North Carolina Constitution.

5. **Divorce and Alimony § 25.12; Adoption § 2— visitation by grandparents—substantial relationship with grandchildren—evidence sufficient**

   The trial court did not abuse its discretion in an adoption action following a divorce where the grandparents sought visitation by concluding that the grandparents had established a substantial relationship with the grandchildren where, although the grandparents had not maintained contact with the children after April of 1986, April of 1986 was when respondent had prohibited the grandparents from visiting the children; the evidence established that the grandparents had maintained contact with the children since their birth

through regular visitation, both in their home and respondent's home; and the children had gone on walks with the grandparents, gone shopping, and stayed overnight with them.

**6. Divorce and Alimony § 25.12— visitation rights of grandparents — substantial change of circumstances**

The trial court did not err in an adoption action following a divorce by finding that it was in the best interest of the children to maintain a continuing relationship with the grandparents through visitation where there had been a substantial change of circumstances since the entry of the previous custody order in that the visitation rights of the grandparents were arbitrarily terminated by the natural mother. N.C.G.S. § 50-13.7(a); N.C.G.S. § 50-13.2A.

APPEAL by plaintiff from *Bryant, Judge.* Judgment entered 13 March 1987 in District Court, CHEROKEE County. Heard in the Court of Appeals 3 December 1987.

*McKeever, Edwards, Davis & Hays, P.A., by Zeyland G. Mc-Kinney, Jr., for respondent-appellant.*

*Ronald Stephen Patterson, P.A., for movant-appellee.*

JOHNSON, Judge.

On 24 October 1984, Catherine Hedrick (Bowling) was granted an absolute divorce from her husband, Marvin A. Hedrick, Jr. Pursuant to that order, the mother was granted custody of the two minor children, Heather and Lauren. Catherine Hedrick later married Richard Bowling. In April 1986, Marvin A. Hedrick, Jr. signed a consent to adoption giving up his right to the children. On 22 May 1986, Richard Bowling petitioned the court in a special proceeding for adoption of the two children.

On 10 December 1986, Marvin A. Hedrick, Sr. and Dorothy Hedrick (movants), paternal grandparents of Heather Hedrick and Lauren Hedrick, filed a motion to intervene and a motion in the cause to gain visitation rights with their grandchildren pursuant to G.S. sec. 50-13.2A.

In their motions, movants alleged that they were paternal grandparents of the minor children and that they had maintained a close relationship with their grandchildren until April of 1986. On 13 March 1987, the action came on for hearing before Judge Steven J. Bryant.

The evidence at the hearing established that since the birth of the two minor children, the grandparents had maintained contact with them through regular visitation, both in their home and in the home of the mother. From October of 1985 until February of 1986, they visited the grandchildren at least once per week. This visitation took place in the home of the grandparents prior to the burning of their home in October 1985 and subsequently in residences in which they lived.

Both grandchildren have gone on walks with the grandparents, have been taken shopping, and have stayed overnight with the grandparents. The grandmother has made clothes for the minor children, has taken the minor children to the doctor, and has enrolled one of the minor children into school.

The parties stipulated that Heather Hedrick is afraid for her own safety when she is around her natural grandparents, and that she has no desire to visit or see either of the grandparents. Furthermore, the grandfather did have a drinking problem, which was exhibited before the grandchildren at various times. However, Mr. Hedrick had not consumed alcohol for a period in excess of one year prior to April of 1986.

Visitation with the grandchildren had been in the mornings, on the weekends, or at various times up until April of 1986, at which time the grandparents were denied further visitation with the grandchildren by the mother, Catherine Hedrick (Bowling).

On 13 March 1987, after hearing the evidence, and after making findings of fact and conclusions of law, the trial court granted the grandparents visitation rights with their grandchildren. Judgment was filed on 17 April 1987. From the entry of judgment, respondent-appellant appealed.

Respondent-appellant brings forth thirteen assignments of error grouped into nine arguments for this Court's review. After careful consideration, we find no error and affirm the trial court's judgment.

I

[1] In her first argument, respondent contends that the trial court erred in (1) failing to make findings of fact and a conclusion of law as to the fitness of the grandparents and (2) in failing to

make findings of fact as to whether the best interests of the minor children would be served by visiting the grandparents.

"[I]t is generally agreed that visitation rights should not be permitted to jeopardize a child's welfare." *Swicegood v. Swicegood*, 270 N.C. 278, 282, 154 S.E. 2d 324, 327 (1967). "To support an award of visitation rights[,] the judgment of the trial court should contain findings of fact which sustain the conclusion of law that the party is a fit person to visit the child and that such visitation rights are in the best interest of the child." *Montgomery v. Montgomery*, 32 N.C. App. 154, 157, 231 S.E. 2d 26, 29 (1977).

Based on the above-stated principle from *Montgomery*, respondent argues that the court made no specific finding as to the fitness of the grandparents, other than a finding as to Marvin Hedrick, Sr.'s drinking problem. Respondent's argument is without merit. The trial court specially found as facts that:

3. Since the birth of the minor children, Marvin and Dorothy Hedrick, Intervenors, have united regularly with their grandchildren; said visits have taken place in the home Intervenors-Hedricks, before their house burned and in the home of Catherine Bowling (formerly Hedrick) as late as February, 1986.

4. That the minor children have been taken shopping by Intervenors-Hedricks; that the minor children have been taken on walks by Intervenors-Hedricks; that Mrs. Hedrick has hand sewn clothes for her minor granddaughter, that she has taken the children to the medical doctor when it appeared necessary.

While the welfare of a child is always to be treated as the paramount consideration, the courts recognize that wide discretionary power is necessarily vested in the trial courts in reaching decisions in these particular cases. *In re Moore*, 8 N.C. App. 251, 174 S.E. 2d 135 (1970). We believe that the trial court's findings of fact established the fitness of the grandparents and that the welfare of the children is subserved. Thus, respondent's assignment of error is overruled.

II

[2] Next, respondent contends that the trial court erred in allowing the grandparents to intervene pursuant to G.S. sec. 50-13.2A, because the trial court made no findings of fact as to whether a substantial relationship existed between the grandparents and the grandchildren. This argument is without merit.

Respondent argues that in order for the trial court to decide whether the movants had a right to intervene, it was incumbent upon the trier of fact to take the pleadings submitted by the movants and hold a preliminary evidentiary hearing to determine whether a substantial relationship exists between the movants and the grandchildren pursuant to G.S. sec. 50-13.2A.

We believe that a fair reading of this statute does not belie that conclusion. G.S. sec. 50-13.2A states in part that:

[a] biological grandparent *may institute an action or proceeding* for visitation rights with a child adopted by a stepparent or a relative of the child where a substantial relationship exists between the grandparents and the child.

It is clear to this Court that the right to institute the suit mandated a right to intervene on behalf of the grandparents. Furthermore, in order for the court to grant visitation rights, it must be established that the grandparents have a substantial relationship with the grandchildren. That requirement is at least part of what the hearing is designed to establish. The trial judge addressed the issue of whether the grandparents had a right to intervene based on the pleadings before it. Without the necessity of a preliminary hearing, the record reveals that the trial court made a preliminary determination that the grandparents had a right to intervene pursuant to G.S. sec. 50-13.2A. Thus, respondent's assignment of error is overruled.

III

[3] Next, respondent contends that the trial court erred in proceeding with the merits of the case where the intervenors failed to join a necessary party. Again, we disagree.

Necessary parties must be joined in an action. A person is a necessary party to an action when he is so vitally interested in the controversy involved in the action that a valid judgment can-

not be rendered in the action completely and finally determining the controversy without his presence as a party. *Strickland v. Hughes*, 273 N.C. 481, 160 S.E. 2d 313 (1968). When a complete determination of the matter cannot be had without the presence of other parties, the court must cause them to be brought in. *MacPherson v. The City of Asheville*, 283 N.C. 299, 196 S.E. 2d 200 (1973).

Respondent argues that the adopting father, Richard Bowling, was a necessary party to this action. For purposes of that case, the trial court found as a fact that Richard Bowling was the adoptive father, although the adoption had not been finalized.

The best interests of the children are and have always been the polar star in determining custody actions as well as visitation rights. *See Green v. Green*, 54 N.C. App. 571, 284 S.E. 2d 171 (1981); *Mathews v. Mathews*, 24 N.C. App. 551, 211 S.E. 2d 513 (1975). Whether the grandparents had established a substantial relationship with the grandchildren and whether there was a substantial change of circumstances to warrant granting the grandparents visitation rights were also the paramount issues before the court. The adoption of the two grandchildren by Richard Bowling was not finalized until one month after the entry of the judgment in the case *sub judice*. Whatever rights Richard Bowling was to gain in becoming an adoptive parent had not vested at the time of the hearing and therefore the adjudication of the issues before the court did not require his presence in the suit. The trial court could make a complete determination of the issues before it and enter a valid judgment without the necessity of requiring the grandparents to join Richard Bowling as a necessary party. Thus, respondent's assignment of error on this issue is overruled.

## IV, V, VI

We find respondent's Assignments of Error 4, 5, and 6 to be meritless and without need for discussion.

## VII

[4] Next, respondent contends that G.S. sec. 50.13.2A is unconstitutional as violative of Article I, sec. 19 of the North Carolina Constitution and the equal protection clause of the

United States Constitution expressly incorporated into the North Carolina Constitution. We disagree.

"The equal protection clauses of the United States and North Carolina Constitutions impose upon law-making bodies the requirement that any legislative classification 'be based on differences that are reasonably related to the purposes of the Act in which it is found.'" *State v. Greenwood*, 280 N.C. 651, 656, 187 S.E. 2d 8, 11-12 (1972), *quoting, Morey v. Doud*, 354 U.S. 457, 465, 1 L.Ed. 2d 1485, 1491, 77 S.Ct. 1344, 1350 (1957).

Courts traditionally have employed a two-tiered scheme of analysis when evaluating equal protection claims. *Texfi Industries v. The City of Fayetteville*, 301 N.C. 1, 269 S.E. 2d 142 (1980).

> The upper tier of equal protection analysis requiring strict scrutiny of a governmental classification applies only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. (Citations omitted). The 'strict scrutiny' standard requires that the government demonstrate that the classification it has imposed is necessary to promote a compelling governmental interest. (Citation omitted).
>
> When a governmental classification does not burden the exercise of a fundamental right or operate to the peculiar disadvantage of a suspect class, the lower tier of equal protection analysis requiring that the classification be made upon a rational basis must be applied. (Citations omitted). The 'rational basis' standard merely requires that the governmental classification bear some rational relationship to a conceivable legitimate interest of government. Additionally, in instances in which it is appropriate to apply the rational basis standard, the governmental act is entitled to a presumption of validity. (Citations omitted).

*White v. Pate*, 308 N.C. 759, 766-67, 304 S.E. 2d 199, 204 (1983).

There is no fundamental right or suspect class involved in respondent's equal protection challenge, and thus we deem that the "rational basis" test is appropriate.

Respondent contends that the statute creates two classes of persons. The first class consists of grandparents whose grand-

children are adopted by two people, neither of whom is a relative or stepparent of the child. The second class consists of grandparents whose grandchildren are adopted by two people, one of whom is a relative or stepparent of the child. Respondent argues that the first class is discriminated against because the child adopted remains a "stranger to the bloodline" of his parents, and the grandparents cannot gain visitation rights even if they have a substantial relationship with the child.

We note that in respondent's analysis of the first class concerned, she excludes the additional fact that the parental rights of both biological parents must be terminated in order to preclude any order of visitation rights for grandparents. Such is the fatal flaw in respondent's analysis. For it is that distinction which justifies the different treatment of the two classes of grandparents which respondent alleges is unconstitutional.

The overall and paramount concern that is reiterated throughout our statutes and case law is that the welfare of the child is the polar star. *See Green, supra.* For purposes of the child's welfare, if their parents' rights have been terminated, and such child or children have not been adopted by a stepparent or relative, any legal continuation of the relationship of the grandparents has been indirectly terminated because the parental rights have been terminated, and the "bloodline" of the parents is severed by persons of no relation adopting the children.

It is an entirely legitimate governmental interest for the State to make such a distinction, since the welfare and best interest of the child is primary. And if there still exists a bond between the maternal or paternal grandparents and the grandchildren, as evidenced by a stepparent or relative adopting the child, the governmental classification bears some rational relation to a conceivable legitimate governmental interest to maintain that bond. Thus, we believe that there is a reasonable basis for the classification elicited in G.S. sec. 50-13.2A. Therefore, the classification does not violate the equal protection guarantees of either our state or federal constitutions.

## VIII

[5]    Next, respondent contends that there was not sufficient competent evidence introduced at trial to support the trial court's

conclusion that a substantial relationship existed between the grandparents and their grandchildren. This argument is without merit.

"The findings of the trial judge, who has the opportunity to see and hear the witnesses, are binding on appellate courts if supported by competent evidence." *King v. Demo*, 40 N.C. App. 661, 668, 253 S.E. 2d 616, 621 (1979). The decision of the trial judge in the case *sub judice* should not be upset on appeal absent a clear showing of abuse of discretion. *See In re Mason*, 13 N.C. App. 334, 185 S.E. 2d 433 (1971), *cert. denied*, 280 N.C. 495, 186 S.E. 2d 513 (1972).

Respondent emphasized that the grandparents had not maintained contact with the grandchildren since April of 1986, one year prior to the hearing, and that all previous contact with the grandchildren was intermittent. It is clear from the record that April 1986 is the precise time that the respondent prohibited the grandparents from visiting her children. Furthermore, the evidence established that since the birth of the children, the grandparents maintained contact with them through regular visitation, both in their home and the home of respondent; that this visitation took place in the home of the grandparents prior to the burning of their home and that the minor children have spent time in their home, have gone on walks with the grandparents, have been shopping and stayed overnight with them. Thus, we conclude that the court did not abuse its discretion because the record is replete with competent evidence to support the trial court's conclusion that the grandparents established a substantial relationship with the grandchildren.

### IX

[6] Finally, respondent argues that the movants failed to introduce sufficient competent evidence and the trial court failed to make findings of fact and a conclusion of law as to whether a substantial change of circumstances existed affecting the welfare of the children since the entry of the previous custody order. This argument is without merit.

"[T]he modification of a custody decree must be supported by findings of fact based on competent evidence that there has been a substantial change of circumstances affecting the welfare of the

Hedrick v. Hedrick

child, and the party moving for such modification assumes the burden of showing such change of circumstances." *Blackley v. Blackley*, 285 N.C. 358, 362, 204 S.E. 2d 678, 681 (1974). G.S. sec. 50-13.7(a) provides that "an order of a court of this State for custody of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested." "Visitation privileges are but a lesser degree of custody [and] [t]hus . . . the word custody as used in G.S. 50-13.7 was intended to encompass visitation rights as well as general custody." *Clark v. Clark*, 294 N.C. 554, 575-76, 243 S.E. 2d 129, 142 (1978).

We believe that G.S. sec. 50-13.2A must be read *in pari materia* with G.S. sec. 50-13.7(a), which therefore requires a showing of a substantial change of circumstances. The record reveals that there existed a substantial change of circumstances when the visitation rights of the grandparents were arbitrarily terminated by the natural mother when the grandparents had established a continuing substantial relationship with their grandchildren since the entry of the earlier custody order. Based upon that, the court found sufficient facts to justify its conclusion that it was in the best interest of the grandchildren to maintain a continuing relationship with the grandparents through the granting of visitation privileges. Thus, respondent's assignment of error on this issue is overruled.

Respondent has not brought forward or argued in her brief one of her assignments of error. We deem it abandoned and decline to review it. N.C.R. App. P., Rule 28(a).

Accordingly, for all the aforementioned reasons, the judgment of the trial court is affirmed.

Judges ARNOLD and ORR concur.