An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1455

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

THOMAS LEWIS HUNT,
    Plaintiff,

v.

VELMA LONG,
    Defendant

Columbus County
No. 12 CVD 1501

Appeal by defendant from order entered 10 September 2013 by Judge Jerry A. Jolly in Columbus County District Court. Heard in the Court of Appeals 3 June 2014.

> *No brief filed for plaintiff-appellee.*

> *Wyrick Robbins Yates & Ponton LLP, by Tobias S. Hampson, for defendant-appellant.*

HUNTER, Robert C., Judge.

Velma Long ("defendant") appeals from an order granting sole and exclusive custody of her grandson, L.J.[1], with L.J.'s biological father, Thomas Lewis Hunt ("plaintiff"). On appeal, defendant argues that the trial court's findings of fact do not support its conclusion of law that plaintiff did not act

---

[1] A pseudonym will be used to protect the identity and privacy of the minor involved in this case.

inconsistently with his constitutionally protected status as L.J.'s natural parent, or in the alternative, that the trial court failed to enter findings of fact or conclusions of law addressing plaintiff's fitness to be a parent.

After careful review, we reverse the trial court's order and remand for further proceedings.

**Background**

The following evidence was presented before the trial court: Defendant's daughter, Tanya, and plaintiff were involved in a romantic relationship that resulted in the birth of L.J. in June 2007. Tanya and L.J. lived with plaintiff in his home in Chadbourn, North Carolina. Around April 2008, Tanya ended the relationship with plaintiff and moved into defendant's home with L.J. A year later, Tanya and L.J. moved into a mobile home on defendant's property.

Defendant testified that she was L.J.'s primary caretaker even though he lived with Tanya. She estimated that L.J. was with her roughly seventy percent of the time due to Tanya's work obligations. When L.J. was an infant, defendant would bathe him, feed him, change his diapers, and help potty train him. L.J. required frequent trips to the doctor, during which defendant would accompany him. Defendant also took a large role

in helping to educate L.J. by enrolling him in school and paying for his uniform, supplies, and transportation costs.

Throughout this time period, plaintiff would visit L.J. one or two times per month. Conflicting testimony was presented regarding how much plaintiff paid in child support; plaintiff testified that he provided Tanya with $3,523.09 in support from 2010 to 2012, but the check stubs admitted into evidence as proof of plaintiff's payments amounted only to $1,545.00. Plaintiff testified that he made repeated efforts to see L.J., but Tanya and defendant would ignore his phone calls.

Defendant testified that she thought plaintiff had an alcohol problem, but plaintiff denied that allegation. However, he admitted to being convicted of two DWIs and being charged with a third, with his driver's license being revoked after being convicted of a DWI in 2008. Jeanne Suggs, defendant's niece and an acquaintance of plaintiff and Tanya, testified that she frequently saw plaintiff drinking to excess, sometimes beginning as early as ten o'clock in the morning. She also described an instance where plaintiff drove under the influence of alcohol after his license was revoked in 2008. Defendant further testified that she stopped L.J. from going fishing with plaintiff on one occasion because plaintiff had been drinking.

Plaintiff testified that he did not think he had an alcohol problem, but he admitted to drinking three or four beers after work to relieve stress.

Tanya died in October 2012. Defendant testified that after the funeral, she had a conversation with plaintiff in which he intimated a desire to leave L.J. in defendant's custody. Plaintiff testified that he remembered having a conversation with defendant at the funeral, and he admitted that he did not ask defendant to give him custody of L.J. at that time.

In December 2012, plaintiff filed suit to establish paternity and obtain full custody of L.J. After plaintiff's paternity was established, the trial court entered an order giving him temporary physical custody over L.J., with visitation rights for defendant. On 22 January 2013, defendant filed an answer and counterclaim for full custody over L.J. After conducting a hearing on 11 and 12 June 2013, the trial court entered an order on 10 September 2013 awarding sole legal custody to plaintiff and dismissing defendant's counterclaim. Defendant filed timely notice of appeal.

**Discussion**

**I. Custody Award**

Defendant's sole argument on appeal is that the trial court erred by granting sole and exclusive legal custody over L.J. to plaintiff. Because the trial court failed to enter findings of fact and conclusions of law as to whether plaintiff was fit to receive custody over L.J., we reverse the trial court's order and remand for further proceedings.

Under N.C. Gen. Stat. § 50-13.2(a) (2013), the trial court generally must "award the custody of [a] child to such person, agency, organization or institution as will best promote the interest and welfare of the child." *See also Hedrick v. Hedrick*, 90 N.C. App. 151, 156, 368 S.E.2d 14, 17 (1988) ("The best interests of the children are and have always been the polar star in determining custody actions[.]"). However, a parent has an "interest in the companionship, custody, care, and control of [his or her children that] is protected by the United States Constitution." *Price v. Howard*, 346 N.C. 68, 73, 484 S.E.2d 528, 531 (1997). So long as a parent has this paramount interest, a custody dispute between a parent and a nonparent may not be determined by the "best interest of the child" test; rather, the parent benefits from a presumption that he or she will act in the best interest of the child. *Price*, 346 N.C. at 79, 484 S.E.2d at 534. However, "a natural parent may lose his

constitutionally protected right to the control of his children in one of two ways: (1) by a finding of unfitness of the natural parent, or (2) where the natural parent's conduct is inconsistent with his or her constitutionally protected status." *David N. v. Jason N.*, 359 N.C. 303, 307, 608 S.E.2d 751, 753 (2005). Because a finding of parental fitness does not preclude a finding that a parent's conduct is inconsistent with his or her constitutionally protected status, *David N.*, 359 N.C. at 307, 608 S.E.2d at 753, this test has been described as "disjunctive" by our Courts, *Mason v. Dwinnell*, 190 N.C. App. 209, 222, 660 S.E.2d 58, 66 (2008).

Defendant specifically alleged in her counterclaim that plaintiff was unfit to be a parent. At the hearing, significant inquiry was made into defendant's contention that plaintiff was an alcoholic. Plaintiff admitted at the hearing that he had been convicted on two DWI charges and had been charged with a third. His driver's license was revoked in 2008 as a result of his second DWI, and as of the date of the hearing on 11 June 2013, he had not renewed his license. Plaintiff testified that he drinks three or four beers after work to relieve stress, but does not drink every day. Defendant and a number of witnesses who took the stand on her behalf testified extensively as to

various encounters they had with plaintiff during L.J.'s lifetime where plaintiff appeared drunk, had passed out due to excessive alcohol consumption, or had driven under the influence of alcohol without a license.

Despite this evidence, the trial court failed to address the alleged substance abuse issues or plaintiff's fitness to be a parent in its order. Rather, it concluded only that plaintiff had not acted inconsistently with his constitutionally protected status as L.J.'s natural parent and therefore declined to use the "best interest of the child" test in its award of custody to plaintiff. This Court has previously held that DWI convictions and substance abuse are relevant considerations in determining whether a parent is fit to have custody over a child. *See Raynor v. Odom*, 124 N.C. App. 724, 731-32, 478 S.E.2d 655, 659-60 (1996). We take no position as to whether the evidence presented here was sufficient to support a finding of unfitness. However, because unfitness is one avenue through which a nonparent can reach the "best interest of the child" test in a custody dispute with a natural parent, *David N.*, 359 N.C. at 307, 608 S.E.2d at 753, this issue required determination by the trial court. *See Cunningham v. Cunningham*, 171 N.C. App. 550, 558, 615 S.E.2d 675, 682 (2005) ("[T]he trial court must resolve

all issues raised by relevant evidence that directly concern the fitness of a party to have care, custody and control of a child[.]"); *Witherow v. Witherow*, 99 N.C. App. 61, 63, 392 S.E.2d 627, 629 (1990) ("[T]he trial court need not make a finding as to every fact which arises from the evidence; rather, the court need only find those facts which are material to the resolution of the dispute.").

## Conclusion

Because the trial court failed to address in its order whether plaintiff was fit to have full care, custody, and control over L.J., we reverse the trial court's order and remand for further proceedings.

REVERSED AND REMANDED.

Judges McGEE and ELMORE concur.

Report per Rule 30(e).