IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 LONA LEANN GROSSHART, )
 )
 Appellant, )
 v. ) WD83672
 )
 ) OPINION FILED:
 KANSAS CITY POWER & LIGHT ) April 13, 2021
 COMPANY, )
 )
 Respondent. )

 Appeal from the Circuit Court of Cole County, Missouri
 The Honorable Patricia S. Joyce, Judge

 Before Division Three: Karen King Mitchell, Presiding Judge, and
 Thomas H. Newton and Anthony Rex Gabbert, Judges

 Lona Grosshart appeals from the judgment dismissing, with prejudice, her claims of

fraudulent concealment, strict liability, and negligence arising from alleged exposure to heavy

metals released by Kansas City Power & Light Company’s coal-fired electric power plant near

La Cygne, Kansas. Grosshart raises three points on appeal. She argues that the motion court

erred in dismissing her claims because (1) the Kansas statute of repose is not substantive and,

thus, does not bar her claims; (2) she stated claims for negligence and strict liability in that she

adequately alleged facts demonstrating a causal connection between her Missouri exposure to

the power plant’s environmental releases and her injuries; and (3) she stated a claim for
fraudulent concealment in that she adequately alleged that KCP&L owed a duty to inform her

that the power plant was releasing heavy metals into the environment.

 Finding that dismissal of Grosshart’s strict liability and negligence claims arising out of

her Kansas exposure at the farm and her fraudulent concealment claim was appropriate, we

affirm the motion court’s rulings on those claims. Finding that dismissal of Grosshart’s strict

liability and negligence claims arising from her alleged 2016 Missouri exposure was

inappropriate, we reverse the court’s ruling on those claims and remand for further proceedings

consistent with this opinion.

 Background1

 Born in 1966, Grosshart was raised on a family farm near Pleasanton, Kansas, located

approximately four miles south-southwest of the power plant. While living on the farm, Grosshart

consumed, bathed in, and otherwise used water from a well drilled into a shallow alluvial aquifer

below the farm and downstream from the power plant.

 Unit I of the power plant began operating in 1973, and Unit II began operating in 1977.

Beginning in approximately 1973, KCP&L placed byproducts of the coal-firing process in settling

ponds, at least one of which was not designed, constructed, or monitored by a professional

engineer. Grosshart alleges that the power plant has been releasing heavy metals into the

environment for more than forty years.

 Grosshart left the farm in 1986 and subsequently lived in Manhattan, Kansas; Keystone,

Colorado; Butler, Missouri; Springfield, Missouri; Branson, Missouri; Hollywood, Florida; New

York, New York; and the Los Angeles, California area. After 1986, Grosshart “often returned to

 “At this stage in the proceedings, we take as true all facts alleged in [Grosshart’s] operative petition.” Hill
 1

v. Freedman, 608 S.W.3d 650, 652 n.1 (Mo. App. W.D. 2020). The background information presented here comes
from Grosshart’s amended petition, the operative pleading in this case.

 2
visit her father at the [f]arm,” but she does not identify when those subsequent visits to the farm

occurred or that she was exposed to heavy metals from the power plant during those visits.

Grosshart’s mother moved to Butler, Missouri, in 1986, and Grosshart often visited her there, too.

 Butler’s water supply is obtained from sources that include the Marais des Cygnes River

and its tributary Miami Creek. The shallow alluvial aquifer below the farm feeds into the Marais

des Cygnes River, which continues east into Missouri where it feeds into Miami Creek. Heavy

metals from the power plant also are present in Butler’s water supply, which is the source of the

water Grosshart consumed and used while there.

 In 2012, Grosshart’s health declined dramatically; she developed debilitating fatigue and

other symptoms that left her bedridden and unable to work. She consulted a number of medical

professionals, but none were able to provide a comprehensive diagnosis of her condition or identify

its cause. In December 2013, Grosshart underwent testing that revealed severe heavy metal

toxicity, including a toxic level of cadmium, in her body. In October 2014, Grosshart obtained

soil and well water samples from the farm and submitted them to professional laboratories for

analysis. The results showed high levels of many of the same heavy metals that were present in

her body.

 In February 2016, Grosshart submitted a hair sample for heavy metal testing. The results

showed that Grosshart’s cadmium level was within normal range. After Grosshart’s father died in

early 2016, she spent a total of about nine weeks living with her mother in Butler. In June 2016,

at the five-week mark of her visit, Grosshart submitted another hair sample for testing. Those

results showed that her cadmium level was nearly ten times higher than it had been in February

2016 and more than three times higher than the upper range of the reference interval for

cadmium—the level expected to be present in a healthy person. In October 2016, after her

 3
nine-week stay in Butler, she submitted a third hair sample for testing. The results of the third test

showed that her cadmium level was more than thirty-two times higher than it had been in February

2016 and more than ten times higher than the upper range of the reference interval.

 On July 10, 2016, Grosshart’s mother spoke with a contractor working at the power plant.

He explained that KCP&L knew the power plant emitted heavy metals that settled on the

surrounding land and water, but KCP&L did not test for the presence of heavy metals in the

environment. The contractor also explained that the heavy metals that settled in the soil on or near

the farm or in the aquifer below the farm would have migrated into the Marais des Cygnes River.

Grosshart’s mother relayed this information to Grosshart who shared it with her doctors.

 Following a March 2017 biopsy of her salivary glands, Grosshart was diagnosed with

Sjögren’s Syndrome, a chronic and incurable autoimmune disease caused by environmental

toxicity.2 Among other things, Grosshart alleged,

 In diagnosing Grosshart with Sjögren’s Syndrome in March 2017, Grosshart’s
 doctor expressed the opinion that she developed the disease in response to
 environmental toxicity, i.e., her exposure to the heavy metals and related
 contaminants found at the [f]arm and in Butler, Missouri. This was the first time
 any medical professional had told Grosshart that her heavy metal toxicity was the
 direct cause of a recognized medical condition.

 .....

 Grosshart has . . . been exposed to and has ingested and retained heavy metals and
 other chemical contaminants when drinking and bathing in the water supplied to
 her mother’s home in Butler, Missouri.

 Grosshart’s doctors believe her elevated cadmium levels are directly related to her time

living at the farm and her extended stay in Butler; Grosshart is not aware of any other source of

her exposure to cadmium. High levels of cadmium are associated with chronic fatigue, which is

one of Grosshart’s symptoms.

 2
 Grosshart’s diagnosis was made in California where she resided at the time.

 4
 KCP&L did not inform Grosshart that the power plant was releasing heavy metals into the

surrounding environment.

 Grosshart filed her initial petition on July 10, 2018, and her amended petition on

October 11, 2018, alleging fraudulent concealment (Count I), strict liability (Count II), and

negligence (Count III). With respect to each count, Grosshart requested compensatory and

punitive damages, costs, and “all other relief the Court deems just and proper.”

 KCP&L filed a motion to dismiss and suggestions in support, arguing that (1) Kansas

substantive law applies and Grosshart’s claims are barred by the Kansas statute of repose; (2)

Grosshart fails to state a claim for fraudulent concealment because she does not sufficiently allege

that KCP&L had a duty to disclose; and (3) Grosshart fails to state claims for strict liability and

negligence because she does not sufficiently allege causation with respect to her claimed exposure

through the Butler, Missouri, public water supply system.3 Grosshart filed suggestions in

opposition, and KCP&L filed a reply. The motion court held a brief hearing4 and then issued an

order and judgment granting KCP&L’s motion for the reasons stated therein and dismissing

Grosshart’s amended petition with prejudice.

 This appeal follows.

 Standard of Review

 All three points on appeal challenge the propriety of the motion court’s dismissal of

Grosshart’s claims for failure to state a claim on which relief can be granted. “We review ‘the

grant of a motion to dismiss de novo and will affirm the dismissal on any meritorious ground stated

 3
 KCP&L did not move for dismissal of Grosshart’s strict liability and negligence claims for failure to
adequately plead any other elements of those causes of action.
 4
 The record on appeal does not contain a transcript of the hearing and the docket sheet suggests that there is
no transcript.

 5
in the motion.’” Hill v. Freedman, 608 S.W.3d 650, 654 (Mo. App. W.D. 2020) (quoting Mosby

v. Precythe, 570 S.W.3d 635, 637 (Mo. App. W.D. 2019)).

 “A motion to dismiss for failure to state a claim on which relief can be granted is an attack

on the plaintiff’s pleadings.” Id. (quoting R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist.,

568 S.W.3d 420, 424 (Mo. banc 2019)). “Such a motion is only a test of the sufficiency of the

plaintiff’s petition.” Id. (quoting R.M.A., 568 S.W.3d at 424). “When considering whether a

petition fails to state a claim upon which relief can be granted, [we] must accept all properly

pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations

favorably to the pleader.” Id. (quoting R.M.A., 568 S.W.3d at 424). “The [c]ourt does not weigh

the factual allegations to determine whether they are credible or persuasive.” Id. (quoting R.M.A.,

568 S.W.3d at 424). “Instead, [we] review[] the petition to determine if the facts alleged meet the

elements of a recognized cause of action . . . .” Id. (quoting R.M.A., 568 S.W.3d at 424). “In order

to withstand the motion [to dismiss], the petition must invoke ‘substantive principles of law

entitling plaintiff to relief and . . . ultimate facts informing the defendant of that which plaintiff

will attempt to establish at trial.’” Id. (quoting State ex rel. Henley v. Bickel, 285 S.W.3d 327,

329-30 (Mo. banc 2009)). “If the petition sets forth any set of facts that, if proven, would entitle

the plaintiffs to relief, then the petition states a claim.” Id. (quoting Lynch v. Lynch, 260 S.W.3d

834, 836 (Mo. banc 2008)).

 Analysis

 Grosshart raises three points on appeal. She argues that the motion court erred in

dismissing her petition because (1) the Kansas statute of repose, found in § 60-513(b) of the Kansas

Statutes (2018),5 is not substantive and, thus, does not bar her claims; (2) she states claims for

 5
 In pertinent part, § 60-513 states that an action for personal injury

 6
negligence and strict liability in that she adequately alleges facts demonstrating a causal connection

between her Missouri exposure to KCP&L’s environmental releases and her injuries; and (3) she

states a claim for fraudulent concealment in that she adequately alleges that KCP&L owed a duty

to inform her of the power plant’s releases.

 As to Grosshart’s first point—the Kansas statute of repose is not substantive and, thus, does

not bar her claims—there are two related issues on which the parties agree. First, Kansas

substantive law governs Grosshart’s claims against KCP&L. Missouri follows the Restatement

(Second) of Conflict of Laws, which states, in pertinent part,

 In an action for a personal injury, the local law of the state where the injury occurred
 determines the rights and liabilities of the parties, unless, with respect to the
 particular issue, some other state has a more significant relationship . . . to the
 occurrence and the parties, in which event the local law of the other state will be
 applied.

Restatement (Second) of Conflict of Laws § 146; see Rider v. The Young Men’s Christian Ass’n

of Greater Kansas City, 460 S.W.3d 378, 388 (Mo. App. W.D. 2015) (“When a conflict of law

exists, Missouri evaluates which law should govern according to the Restatement (Second) of

Conflicts of Laws.”); Wilson v. Image Flooring, LLC, 400 S.W.3d 386, 397 (Mo. App. W.D. 2013)

(applying Restatement (Second) of Conflict of Laws § 146 to determine which state’s law governs

in a negligence action). As the location of the power plant and the location of the vast majority of

Grosshart’s alleged exposure, Kansas is both the place of the alleged injury and the state with the

most significant relationship with the case.

 shall not be deemed to have accrued until the act giving rise to the cause of action first causes
 substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the
 initial act, then the period of limitation shall not commence until the fact of injury becomes
 reasonably ascertainable to the injured party, but in no event shall an action be commenced more
 than 10 years beyond the time of the act giving rise to the cause of action.

§ 60-513(a) and (b).

 7
 Second, Missouri procedural law applies to Grosshart’s claims. Missouri courts generally

apply Missouri law to procedural questions even if another state’s substantive law governs the

underlying claim. “Regardless of which state’s law governs the substantive issues involved in this

case, . . . procedural questions are determined by the state law where the action is brought.”

Kissinger v. Am. Family Mut. Ins. Co., 563 S.W.3d 765, 775 (Mo. App. W.D. 2018) (quoting

Williams v. Silvola, 234 S.W.3d 396, 399 (Mo. App. W.D. 2007)); see Brizendine v. Bartlett Grain

Co., LP, 477 S.W.3d 710, 714 (Mo. App. W.D. 2015) (finding Missouri law governed all

procedural issues even though Kansas law determined the question of negligence because the

alleged tort occurred in Kansas).

 Turning to Grosshart’s first point, she argues that her claims are not time barred by the

Kansas statute of repose in § 60-513(b) because it is a procedural statute and, as such, should not

be applied by this court.6 Generally, Missouri courts consider statutes of repose to be substantive.

In Blaske v. Smith & Entzeroth, Inc., 821 S.W.2d 822, 825 (Mo. banc 1991), the Court rejected

several constitutional challenges to § 516.097, a ten-year statute of repose that shielded persons

who provided architectural, engineering, and construction services from liability for defective or

unsafe conditions involving improvements to real property.7 In doing so, the Court recognized the

 6
 Grosshart also raises a related issue—the applicability of Missouri’s borrowing statute, § 516.190. In
relevant part, that statute states, “Whenever a cause of action has been fully barred by the laws of the state . . . in which
it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state.”
“The term ‘originated’ as used in Missouri’s borrowing statute is synonymous with the term ‘accrued.’” Thomas v.
Grant Thornton LLP, 478 S.W.3d 440, 444 (Mo. App. W.D. 2015). “A cause of action accrues when and originates
where damages are sustained and are capable of ascertainment.” Id. at 445 (quoting Day v. DeVries & Assocs., P.C.,
98 S.W.3d 92, 95 (Mo. App. W.D. 2003)). Grosshart claims that her cause of action originated in California because
she resided there when her damages became capable of ascertainment. KCP&L disputes Grosshart’s claim that her
cause of action originated in California. In view of our ruling on the Kansas statute of repose, we need not and do not
address the applicability of § 516.190.
 7
 The relevant version of § 516.097.1 stated,

 Any action to recover damages for personal injury, property damage or wrongful death arising out
 of a defective or unsafe condition of any improvement to real property, including any action for
 contribution or indemnity for damages sustained on account of the defect or unsafe condition, shall
 be commenced within ten years of the date on which any such improvement is completed.

 8
“basic difference” between statutes of limitation and statutes of repose and characterized the statute

at issue there—§ 516.097—as a substantive statute of repose.

 A statute of limitation[] allows the cause of action to accrue and then cuts off the
 claim if suit is not filed within a certain period of time. A statute of repose
 eliminates the cause of action altogether after a certain period of time following a
 specified event; in this instance, the completion of construction. More importantly,
 the cause of action is eliminated before the plaintiffs’ injury and thus before
 plaintiffs’ cause of action accrues. If the constitution places a limitation on the
 legislature that prohibits it from eliminating a potential cause of action before it
 arises, such a provision would prohibit the legislature from changing the
 substantive law in any way that adversely affects any potential litigant. It is obvious
 that neither the United States Constitution nor the Missouri Constitution purports
 to contain any such limitation.

Id. at 834.

 Likewise, in Ambers-Phillips v. SSM DePaul Health Center, 459 S.W.3d 901, 906 (Mo.

banc 2015), the Court described § 516.1058 as a “classic example of a statute of repose” because

it provided that “no suit could be brought more than 10 years after the foreign object was left in

the body, without regard to whether the negligent act had at that point been discovered.” The

Court further explained the “philosophical and conceptual differences between statutes of

limitation[] and statutes of repose” by noting that the

 main thrust [of statutes of limitation] is to encourage the plaintiff to “pursu[e] his
 rights diligently” . . . [b]ut a statute of repose is a judgment that defendants should
 “be free from liability after the legislatively determined period of time, beyond
 which the liability will no longer exist and will not be tolled for any reason.”

Id. at 907-08 (quoting CTS Corp. v. Waldburger, 573 U.S. 1, 9 (2014)). “The primary

consideration underlying a statute of repose is ‘fairness to a defendant,’ the belief that there comes

a time when the defendant ‘ought to be secure in his reasonable expectation that the slate has been

wiped clean of ancient obligations . . . .’” Id. at 908 n.7 (quoting R.A.C. v. P.J.S, Jr., 927 A.2d 97,

 8
 The relevant version of § 516.105 stated, in pertinent part, “In no event shall any action for damages for
malpractice, error, or mistake be commenced after the expiration of ten years from the date of the act of neglect
complained of . . . .”

 9
105 (N.J. 2007)). In view of the differences between statutes of limitation and statutes of repose,

the Court deemed precedent involving statutes of limitation “not persuasive” authority when ruling

on a statute of repose. Id. at 810 n.8.

 Grosshart points out that the Court in Ambers-Phillips did not expressly analyze whether

§ 516.105 is substantive or procedural. While that is true, the Court articulated the differences

between statutes of limitation and statutes of repose and concluded that § 516.105 is a “classic

example of a statute of repose.” Ambers-Phillips, 459 S.W.3d at 906. The Ambers-Phillips Court

also referred to the ten-year statute of repose at issue in Blaske as part of “the substantive statutory

law” of Missouri. Id. at 910. And the key language of § 60-513(b) (“in no event shall an action

be commenced more than 10 years beyond the time of the act giving rise to the cause of action”)

is strikingly similar to the statute of repose at issue in Ambers-Phillips (“In no event shall any

action for damages for malpractice . . . be commenced after the expiration of ten years from the

date of the act of neglect complained of . . . .”).

 Despite the Court’s clear characterization of statutes of repose as substantive in Blaske and

Amber-Phillips, Grosshart urges us to take a different approach—and conclude that the Kansas

statute of repose is procedural—for two reasons. First, Grosshart argues that there is authority in

Missouri that supports treating statutes of repose as procedural. Grosshart points to Hansen v.

Sears, Roebuck & Company, 574 F. Supp. 641, 643 (E.D. Mo. 1983), where, before Blaske and

Amber-Phillips, the federal court attempted to predict whether Missouri would treat a statute of

repose as procedural or substantive. In concluding that the Court would treat a statute of repose

as procedural, the Hansen court cited Carwood Realty Company v. Gangol, 232 S.W.2d 399, 401

(Mo. 1950) for the proposition that a statute of repose “simply precludes the bringing of an action

to enforce rights, it affects the remedy only.” Id. First, we note that “federal case law interpreting

 10
a Missouri statute is not binding on this court’s interpretation of that statute.” Baker v. Century

Fin. Grp., Inc., 554 S.W.3d 426, 436 (Mo. App. W.D. 2018). This is particularly true when

subsequent decisions from our Supreme Court reach a different conclusion. But on this issue we

disagree with the Hansen court because Carwood, the Missouri authority on which Hansen

purported to rely, is distinguishable.

 The issue in Carwood was whether a statute that created a defense by restricting the period

within which a claim could be asserted also created an affirmative right that could be a basis of a

plea for affirmative relief. 232 S.W.2d at 401. In 1912, the Development Corporation of St. Louis

executed a note secured by a deed of trust on property. Id. at 400. The deed of trust was transferred

several times over the next eighteen years with Carwood claiming that it received the property by

quitclaim deed in 1931. Id. In 1940, the original deed of trust was foreclosed upon and the

property was purchased and conveyed several times until it was eventually sold to the defendants.

Id. at 401. Carwood brought an action to cancel the trustee’s deed held by the defendants and to

quiet title, claiming that the obligation secured by the original deed of trust was barred by the

statute of repose. Id. at 400. In ruling against Carwood, the Court found that the statute did not

create a substantive right that could be the “basis for a plea for affirmative relief”; rather, the statute

provided a defense. Id. at 401. The Court did not analyze the nature of the defensive right created

by the statute. KCP&L does not assert that § 60-513(b) provides a basis for affirmative relief,

instead raising § 60-513(b) as a defense to Grosshart’s claims. Therefore, Carwood does not

reflect an inconsistency in our Supreme Court’s approach to statutes of repose and Hansen does

not support a finding that § 60-513(b) is procedural in the present context.

 Grosshart also relies on an opinion issued by the Supreme Court shortly before Blaske.

R.W. Gast v. Shell Oil Company, 819 S.W.2d 367, 368 (Mo. banc 1991) involved a wrongful death

 11
suit by the parents of a gas station cashier who was shot during a robbery. The parents sued the

contractor who converted a service bay at the gas station into a cashier’s room. Id. The parents

cited § 516.097 in support of their argument for expanded contractor liability for negligent

construction. Id. at 371. But, citing the Missouri rule that a general contractor is not liable to

persons with whom he did not contract after the owner accepts a structure, the Court affirmed a

directed verdict for the contractor. Id. at 370-71. In response to the parents’ argument regarding

§ 516.097, the Court stated, “It suffices to say that statutes of limitation[] are procedural

enactments which are not designed to impose or to define the scope of substantive liability.” Id.

at 371. The question of whether § 516.097 is substantive or procedural was not directly before the

Court in R.W. Gast. And there is nothing in R.W. Gast to suggest that the Court’s use of the

“statutes of limitation[]” language in that case was a conscious attempt to technically define

§ 516.097 as a statute of limitation rather than a statute of repose. In light of the context in which

the Court addressed § 516.097 in R.W. Gast and the Court’s nearly contemporaneous description

of § 516.097 in Blaske as a substantive statute of repose, we do not find Grosshart’s reliance on

R.W. Gast persuasive.

 Second, Grosshart also urges us to take a different approach than that reflected in Blaske

and Amber-Phillips because those cases are inconsistent with the general criteria adopted by the

Court in Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758 (Mo. banc 2007) for

determining whether a statute is procedural or substantive. In Hess, the Court held that an

amendment to the Missouri Merchandising Practices Act that expanded the class of parties eligible

to bring suit for unlawful practices in real estate sales was procedural because it “prescribes a

method of enforcing rights.” Id. at 770 (quoting Wilkes v. Mo. Hwy. & Transp. Comm’n, 762

S.W.2d 27, 28 (Mo. banc 1988)). The Court explained, “[p]rocedural law prescribes a method of

 12
enforcing rights or obtaining redress for their invasion; substantive law creates, defines and

regulates rights.” Id. at 769 (quoting Wilkes, 762 S.W.2d at 28). “The distinction is that

‘substantive law relates to the rights and duties giving rise to the cause of action, while procedural

law is the machinery used for carrying on the suit.’” Id. (quoting State v. Jaco, 156 S.W.3d 775,

781 (Mo. banc 2005)).

 But the Court decided Hess, which did not involve a statute of repose, eight years before

Ambers-Phillips, yet the Court did not mention Hess in Ambers-Phillips, presumably because the

Court did not find Hess applicable to the issues in the latter case. Moreover, if the Hess framework

were applied to § 60-513(b), that statute would be considered substantive because it “defines and

regulates rights.” Hess, 220 S.W.3d at 769 (quoting Wilkes, 762 S.W.2d at 28). It provides a date

certain based on an act of the defendant after which the defendant will be shielded from liability,

even if the plaintiff’s cause of action has not yet accrued and, thus, it “relates to the rights and

duties giving rise to [or terminating] the cause of action.” Id. (quoting Jaco, 156 S.W.3d at 781).

Therefore, Hess does not support a finding that § 60-513(b) is procedural.9

 Based on Blaske and Amber-Phillips, we conclude that Missouri characterizes statutes of

repose as substantive. But no Missouri court has addressed the precise issue presented here—

whether Missouri would treat a foreign statute of repose like § 60-513(b) as substantive or

procedural for choice-of-law purposes. In addressing this issue, we consider relevant decisions

from federal and other state courts.

 9
 Grosshart also argues that Missouri would consider § 60-513(b) to be substantive because the court in Stark
v. Mercantile Bank, N.A., 33 P.3d 609 (Kan. Ct. App. 2000) applied that statute retroactively and, under Missouri law,
only procedural statutes may be applied retroactively. But Grosshart’s reliance on Stark is misplaced because the
court there expressly applied § 60-513(b) prospectively. Id. at 614 (“In addition, we do not believe defendants seek
an impermissible retroactive application of the statute of repose to wrongful conduct predating its enactment. Rather,
they seek prospective application of the statute to a lawsuit filed many years later.”). Thus, Stark does not support a
finding that § 60-513(b) is procedural.

 13
 Most courts that have addressed the nature of a statute of repose in a choice-of-law context

have concluded that the statute retains its substantive character. “The general weight of authority

accepts the characterization of statutes of repose as substantive provisions in a choice[-]of[-]law

context.” Fields v. Legacy Health Sys., 413 F.3d 943, 952 n.8 (9th Cir. 2005). A good example

of the analysis adopted by these courts is Olawole v. ActioNet, Inc., 258 F. Supp. 3d 694, 704 (E.D.

Va. 2017). In Olawole the court noted that “Virginia’s choice-of-law rules recognize three

limitation statutes: (1) ‘statutes of repose,’ (2) ‘procedural’ or ‘pure’ statutes of limitation, and (3)

‘substantive’ or ‘special’ statutes of limitation.”

 First, a statute of repose run[s] from some legislatively selected point in time which
 is unrelated to the accrual of any cause of action and reflect[s] a legislative policy
 determination that a time should come beyond which a potential defendant will be
 immune from liability for his past acts and omissions. Second, a procedural statute
 of limitation[] merely . . . time-restrict[s] the assertion of a remedy and furnish[es]
 an affirmative defense [that is] waived if not pleaded. Last, a substantive statute of
 limitation[] is ordinarily contained in statutes [that] create a new right, and thus
 become[s] [an] element[] of that newly-created right, restricting its availability.
 Indeed, [c]ompliance with a . . . [substantive] statute is a condition precedent to
 maintenance of a claim.

Id. (internal quotations and citations omitted). Thus, Virginia and other jurisdictions that adopt

the majority view would find a foreign statute of repose to retain its substantive character but limit

the circumstances under which a foreign statute of limitation remains procedural in the

choice-of-law context, finding statutes of limitation to be substantive if included in the statute

that creates the cause of action. See also Castillo v. Cessna Aircraft Co., 712 F. Supp. 2d 1306,

1311 (S.D. Fla. 2010) (“[S]tatutes of repose are considered ‘substantive’ for choice[-]of[-]law

purposes pursuant to Florida law.”); Richardson v. Se. Conf., MDL No. 2492, 2020 WL 1515730,

*8 (N.D. Ill. March 30, 2020) (“Under Indiana’s choice-of-law rules . . . statutes of repose are

substantive in nature.”); Rice v. Dow Chem. Co., 875 P.2d 1213, 1217 (Wash. 1994) (“We hold

that statutes of repose . . . raise a conflict of substantive law.”); Boudreau v. Baughman, 368 S.E.2d

 14
849, 857 (N.C. 1988) (“We hold that statutes of repose are treated as substantive provisions for

choice[-]of[-]law purposes.”).10

 Grosshart argues that § 60-513(b) should be treated as procedural because her claims for

negligence, strict liability, and fraudulent concealment are common law claims and, thus, the

Kansas statute of repose is not part of a statute creating the asserted rights. Thus, she advocates

the converse of the Virginia choice-of-law rule. Rather than a statute of limitations losing its

procedural nature if the limitation is part of the statute creating the cause of action, she argues that

a statute of repose should retain its substantive nature only where the limitation on the right is part

of the statute creating the cause of action. In support of her position, she points to cases from

Connecticut and Alabama that take the minority view that, although statutes of repose are generally

considered substantive, in a choice-of-law situation, they should be treated as procedural unless

the limitation is part of the statute creating the cause of action. Courts that have taken this view

generally hold that statutes of repose are indistinguishable from statutes of limitation and are

guided by the forum state’s policy for treating statutes of limitation as procedural.

 In Baxter v. Sturm, Ruger and Co., Inc., 644 A.2d 1297, 1297 (Conn. 1994), the question

presented was whether Connecticut law would consider an Oregon statute of repose substantive or

procedural for choice-of-law purposes. The court began its analysis by concluding that “statutes

of repose . . . are indistinguishable from statutes of limitation for purposes of choice[-]of[-]law

characterization.” Id. at 1298. The court then applied the rules developed for statutes of limitation

to decide “whether reasons of policy support characterizing a repose statute as procedural or

 10
 The Missouri Supreme Court has held that foreign statutes of limitation lose their procedural nature when
the statute creating the cause of action also imposes limitations on the remedy. Toomies v. Continental Oil Co., 402
S.W.2d 321, 323 (Mo. 1966) (holding that the Kansas statute of limitations applied to an action in Missouri where the
statute creating the remedy also imposed limitations, because the limitation became a condition precedent to the right
of action).

 15
substantive for choice[-]of[-]law purposes.” Id. at 1300. “[S]tatutes of repose, like statutes of

limitation, are neither substantive nor procedural per se for choice[-]of[-]law purposes. In any

given case, the characterization of the applicable statute of repose depends on the nature of the

underlying right that forms the basis of the lawsuit.” Id. at 1302. Ultimately, the court concluded

that the Oregon statute of repose was properly considered procedural for choice-of-law purposes

under Connecticut law. Id.; see also, Etheredge v. Genie Indus., Inc., 632 So.2d 1324, 1327 (Ala.

1994) (concluding that North Carolina’s statute of repose is a procedural statute of limitation

because it is not so “inextricably bound up in [a] statute creating the right that it is deemed a portion

of the substantive right itself.”) (emphasis omitted) (quoting Cofer v. Ensor, 473 So.2d 984, 987

(Ala. 1985). Thus, it appears that courts applying the minority view treat a statute of repose as

indistinguishable from a statute of limitation and find that a statute of repose loses its substantive

character if it is not integral to the statute creating the underlying right. Grosshart urges us to adopt

the approach reflected in Baxter and Etheredge and conclude that, in the choice-of-law context,

§ 60-513(b) loses its substantive nature because it is not “inextricably bound up” in a statute that

forms the basis of her lawsuit. Etheredge, 632 So.2d at 1327.

 We find the majority view to be well-reasoned and more in line with the “philosophical

and conceptual differences between statutes of limitation[] and statutes of repose” recognized by

our Supreme Court in Blaske and Amber-Phillips. Amber-Phillips, 459 S.W.3d at 907-08 (a statute

of repose frees a defendant from liability “after the legislatively determined period of time, beyond

which the liability will no longer exist and will not be tolled for any reason”) (quoting CTS Corp.,

573 U.S. at 9). The majority view treats statutes of repose as substantive because the time

limitation runs from the defendant’s last act giving rise to the claim, not, as in the case of a statute

of limitation, from the time of the injury or discovery of the injury. As such, “‘The repose serves

 16
as an unyielding and absolute barrier that prevents a plaintiff’s right of action even before his cause

of action may accrue.’” Boudreau, 368 S.E.2d at 857 (N.C. 1988) (quoting Black v. Littlejohn,

325 S.E.2d 469, 475 (N.C. 1985)). For this reason, a statute of repose is “a substantive definition

of rights rather than a procedural limitation on the remedy used to enforce rights.” Id. Because a

statute of repose makes the commencement of an action within a specific period a condition

precedent to relief, “the limitation period is considered to be tied up with the underlying right” and

the overwhelming weight of authority accepts the characterization of statutes of repose as

substantive in a choice-of-law context. Id. (quoting Chartener v. Kice, 270 F. Supp. 432, 436

(E.D.N.Y. 1967)). Thus, we conclude that § 60-513(b) is substantive for choice-of-law purposes

because it is “a substantive definition of rights” that is part of the underlying cause of action.

 Moreover, when analyzing whether the law of another state is substantive or procedural,

our courts consider the other state’s interpretation of its own statute, Noe v. U.S. Fid. & Guar. Co.,

406 S.W.2d 666, 668 (Mo. 1966), and the Kansas Supreme Court has determined that § 60-513(b)

is substantive. See Harding v. K.C. Wall Prods., Inc., 831 P.2d 958, 968 (Kan. 1992) (holding that

§ 60-513(b) is a substantive statute of repose because it relieves defendants of liability for long-past

claims, regardless of whether the claims have actually accrued). Thus, our conclusion that

§ 60-513(b) is substantive for choice-of-law purposes is consistent with Kansas law.

 Accordingly, § 60-513(b) is part of Kansas substantive law that governs Grosshart’s

claims. Having found that § 60-513(b) applies and, therefore, bars any claim not commenced

within ten years of the act giving rise to the injury, we must determine whether Grosshart’s petition,

read broadly and construed favorably to her, alleges any act by KCP&L in the last ten years that

gave rise to her injury.

 17
 A fair reading of Grosshart’s petition suggests that the alleged releases from the power

plant began in 1973 and were continuing in October 2018, when she filed her amended petition.

This would include releases during the ten-year period before she filed her petition. Grosshart

claims that heavy metals released from the power plant contaminated the water supply at the farm.

However, Grosshart moved from the farm in 1986 and, while she claims to have visited the farm

over the years, she does not identify the dates she was at the farm after 1986. Grosshart also claims

that some of the heavy metals released by the power plant have contaminated the public water

supply system in Butler, Missouri, and that she lived in Butler at some point and made “frequent”

trips there. However, she does not identify specific dates she was in Butler other than a nine-week

period in 2016. Taking as true Grosshart’s alleged facts, only her claim of injurious exposure in

2016 raises the possibility of an act by KCP&L within ten years before she filed her petition.

Again, reading Grosshart’s petition broadly and construing all inferences in her favor, her

allegations regarding the 2016 Missouri exposure allow for a reasonable inference that KCP&L

took some action within the ten-year window preceding the filing of her petition in 2018 to cause

the 2016 Missouri exposure. Thus, Grosshart’s claims based on the 2016 Missouri exposure are

not barred by § 60-513(b). None of Grosshart’s other claims support a reasonable inference that

KCP&L’s actions in the ten years preceding the petition caused injury.

 Accordingly, Point I is granted as to Grosshart’s claims arising from her alleged Kansas

exposure but denied as to her claims arising from her alleged 2016 Missouri exposure. Having

found that § 60-513(b) does not bar Grosshart’s claims based on her alleged 2016 Missouri

exposure, we address her remaining points as they pertain to that claim.

 For her second point, Grosshart contends that the motion court erred in dismissing her

claims for strict liability and negligence because she adequately alleged facts demonstrating a

 18
causal connection between her 2016 Missouri exposure to the power plant’s alleged environmental

releases and her injuries. We agree.

 “Missouri is a fact pleading state.” R.M.A., 568 S.W.3d at 425. “But the facts that must

be pleaded are the ultimate facts, not evidentiary facts.” Id. “The plaintiff has to plead ultimate

facts, not conclusions, which, if true, support each and every proof element of his claim.” Doyle

v. Crane, 200 S.W.3d 581, 590 (Mo. App. W.D. 2006).

 In its motion to dismiss, KCP&L challenged only the causation element of Grosshart’s

strict liability and negligence claims. Regarding causation, Grosshart pleaded,

 Butler, Missouri’s water supply is obtained from sources including the Marais des
 Cygnes River and Miami Creek, a tributary of the Marais des Cygnes River.

 The shallow alluvial aquifer below the [f]arm feeds into the Marais des Cygnes
 River and continues east into Missouri where it feeds into Miami Creek.

 [U]pon information and belief, the heavy metals emitted from the [p]ower [p]lant
 are also present in Butler’s water supply, which is the source of the water Grosshart
 drank, bathed in, and otherwise used during her many visits to Butler between 1986
 and the present.

Grosshart also pleaded that, in 2016, she spent nine weeks living with her mother in Butler.

Around the same time, Grosshart submitted three hair samples for heavy metal testing, and her

reported cadmium levels increased significantly with each test. Grosshart’s doctors believed that

her elevated cadmium levels are directly related to her extended stay in Butler in 2016 and her

visits to the farm. In March 2017, Grosshart was diagnosed with Sjögren’s Syndrome, a chronic

and incurable autoimmune disease caused by environmental toxicity. Grosshart further pleaded,

 In diagnosing Grosshart with Sjögren’s Syndrome in March 2017, Grosshart’s
 doctor expressed the opinion that [Grosshart] developed the disease in response to
 environmental toxicity, i.e., her exposure to the heavy metals and related
 contaminants found at the [f]arm and in Butler, Missouri.

 19
 Grosshart has likewise been exposed to and has ingested and retained heavy metals
 and other chemical contaminants when drinking water and bathing in water
 supplied to her mother’s home in Butler, Missouri.

Because Grosshart alleged that she developed Sjögren’s Syndrome in response to exposure to

heavy metals, that she was exposed to heavy metals from Butler’s public water supply in 2016,

and that heavy metals from the power plant are present in Butler’s water supply, Grosshart pleaded

facts sufficient to satisfy the causation element of her strict liability and negligence claims.

 Point II is granted with respect to Grosshart’s strict liability and negligence claims arising

from her alleged 2016 Missouri exposure.11

 For her third point, Grosshart contends that the motion court erred in dismissing her claim

for fraudulent concealment because she adequately alleged that KCP&L owed a duty to inform

her that the power plant was releasing heavy metals into the environment. Under Kansas law, “[a]

party has a duty to disclose material facts if the party ‘knows that the other is about to enter into

the transaction under mistake as to such facts, and that the other, because of relationship between

them, the customs in trade, or other objective circumstances, would reasonably expect disclosure

of such facts.’” OMI Holdings, Inc. v. Howell, 918 P.2d 1274, 1300-01 (Kan. 1996) (quoting

Boegel v. Co. Nat’l Bank of Denver, 857 P.2d 1362, 1365 (Kan. Ct. App. 1993)).

 Grosshart’s contention that the motion court erred in dismissing her fraudulent

concealment claim fails because she did not allege that, in 2016 when she was visiting her mother

in Butler, KCP&L knew she was about to enter into a transaction under mistaken facts or that

because of a relationship between KCP&L and Grosshart, the customs in trade, or other objective

 11
 As discussed supra, Grosshart’s Kansas claims are barred by § 60-513(b).

 20
circumstances, Grosshart would reasonably expect disclosure by KCP&L. Thus, she failed to

adequately allege a claim for fraudulent concealment under Kansas law.12

 Accordingly, Point III is denied.13

 Conclusion

 Finding that dismissal of Grosshart’s strict liability and negligence claims arising out of

her Kansas exposure at the farm and her fraudulent concealment claim was appropriate, we

affirm the motion court’s rulings on those claims. Finding that dismissal of Grosshart’s strict

liability and negligence claims arising from her alleged 2016 Missouri exposure was

inappropriate, we reverse the court’s ruling on those claims and remand for further proceedings

consistent with this opinion.

 Karen King Mitchell, Presiding Judge

Thomas H. Newton and Anthony Rex Gabbert, Judges, concur.

 12
 Under the facts of this case, we decline Grosshart’s invitation to impose an equitable duty to disclose on
KCP&L based on Tetuan v. A.H. Robins Co., 738 P.2d 1210, 1215 (Kan. 1987), a case involving a claim of fraud
against the manufacturer of the Dalkon Shield intrauterine contraceptive device.
 13
 Moreover, a fair reading of Grosshart’s petition indicates that her fraudulent concealment claim arises from
her alleged exposure while living on the farm. As discussed, supra, claims based on Grosshart’s alleged exposure at
the farm are barred by § 60-513(b).

 21